No. 46,057

STATE OF KANSAS, *Petitioner*, v. JAMES I. NELSON, *Respondent*.

(476 P. 2d 240)

Opinion filed November 7, 1970.

*Ernest C. Ballweg*, Assistant Attorney General, argued the cause, and *Kent Frizzell*, Attorney General, was with him on the brief for the petitioner.

*James I. Nelson*, of Wichita, argued the cause and was on the brief *pro se*.

*Per Curiam:* This is an original proceeding in discipline.

An original complaint was filed with the State Board of Law Examiners by the Wichita Bar Association against the respondent, appellant, James I. Nelson, on June 14, 1968. Subsequently an amended complaint was filed on July 31, 1969, and mailed to the respondent Nelson on August 1, 1969.

The amended complaint read:

"Pursuant to Rule No. 205 of the Supreme Court, and for the purpose of setting forth the charges herein clearly and specifically, the complaint against James I. Nelson is amended to read as follows:

I.

"On April 12, 1967, during the course of a hearing in the District Court of Sedgwick County in Case No. C-11503-67, *In re Application of John E. Patterson for a Writ of Habeas Corpus*, James I. Nelson did make statements which were disrespectful and unjustly critical of the courts in the city of Wichita, and did treat the judge of the municipal court of that city, whom he had called as a witness, with abuse and disrespect.

II.

"On February 28, 1967, James I. Nelson fraudulently represented himself as a detective of the Wichita Police Department while interviewing Daisy M. Hutchens, a witness in a criminal case.

III.

"On November 17, 1967, James I. Nelson appeared on a radio program broadcast by station KFH in Wichita and discussed litigation which was then pending in the United States District Court for the District of Kansas.

IV.

"James I. Nelson did counsel and advise John E. Patterson to commit a burglary at the law offices of Russell Shultz, 331 South Hydraulic in Wichita; and pursuant to Nelson's advice, Patterson did in fact commit a burglary of said office on March 28, 1967.

V.

"In June or July of 1967, James I. Nelson did offer to purchase furniture

and appliances from Freddie Glen Pope, or to take furniture and appliances in payment of attorney fees for services performed by Nelson for Pope, knowing at the time that Pope would obtain such furniture and appliances through burglaries.

"DATED July 31, 1969.

"BY ORDER OF THE BOARD"

A hearing on the charges was held September 2, 1969, by a three-man panel of the State Board of Law Examiners.

The panel filed its report with the State Board of Law Examiners. We quote its report on Count I:

"As to Count I the panel finds that there has been no violation of ethics on the part of respondent in violation of Canons 1 or 18. The panel does not mean to condone the approach used, or attack made, by respondent on witnesses and the court in general by his comments. These comments, if they can be supported by evidence of substance should be made in the form of a complaint to this Board. If they cannot be so supported they would be better unsaid.

"The panel notes that continued use of statements and comments to this effect might constitute a violation of not only Canon 1 but also Canon 3 in that they might constitute an indirect attempt to exert personal influence on the Court. The panel does not believe that the finding today would preclude later use of the same facts in showing a continued series of events in order to support a showing of such a violation.

"Respondent Counsel would be wise to show caution in the future with respect to statements and conduct of this sort."

The panel found that Counts IV and V charging the respondent with counseling, aiding and abetting the commission of burglaries and other crimes were not substantiated because of the questionable character of the complaining witnesses.

The panel, in its report, found the respondent guilty of the charges as alleged in Counts II and III of the complaint.

We quote its finding in connection with Count II of the complaint:

"The panel finds the allegations of Count II have been established by clear and convincing evidence; that on February 28, 1967, respondent did represent himself to Daisy M. Hutchens, a witness in a criminal case, that he was a detective on the Wichita Police Department, when, as a matter of fact, he held no position with the Wichita Police Department but was the attorney for Kenneth Wertz who was charged with burglary, larceny and possession of a narcotic drug. That such misrepresentations were made knowingly and fraudulently.

"That he has therefore violated Canon 15."

The respondent contends that the evidence was not sufficient to support the charge. We cannot agree.

One of the witnesses, Daisy Hutchens, operated some apartments in the city of Wichita, Kansas. Some narcotic drugs were found in

one of the apartments. The respondent represented the person charged with illegal possession of the drugs. Daisy Hutchens testified:

"Q. And have you ever seen Mr. Nelson before?

"A. Yes, I have. He was at my home at one time.

"Q. Do you recall when that was?

"A. Not the exact date. It's been about two years ago.

"Q. What time of day was it, do you remember?

"A. It was in the afternoon, yes, right after lunch, about 1:30 or 2:00.

"Q. Was he alone or—

"A. (Interrupting) No. There was a lady with him, a blond-headed lady. She was small and much shorter than he, and he introduced her as his wife.

"Q. How did he introduce himself?

"A. He said, 'I'm Detective Nelson from the Police Department and I would like to talk to you about some drugs that you have found in an apartment.'

"Q. And what did you say to him?

"A. I said, "Okay, come in.'

"Q. And you admitted him to your house?

"A. Yes, I did."

The witness further testified that she saw the respondent at the traffic court in Wichita and stated:

"Q. And you were with—

"A. (Interrupting) I was with Detective Harvey Twichell.

"Q. And nobody else?

"A. No.

"Q. And you saw James Nelson in there?

"A. Yes, I did. He was sitting at the desk, at a table.

"Q. Did Detective Twichell identify him to you as James Nelson?

"A. Yes. He said, 'Is that the man?' And I said, 'Yes, it is, he was at the house.'

"Q. Then did he tell you his name was James Nelson?

"A. He said, 'Well, his name is James Nelson. He's not a detective at all but a lawyer.'

"Q. And you are positive that was the same man who came to visit you?

"A. Yes, very much so.

"Q. The same man who identified himself as Detective Nelson?

"A. Yes."

We are forced to conclude that the evidence was sufficient to sustain the charge.

We set out the panel's findings on Count III as follows:

"As to Count III the panel finds that James I. Nelson did appear on radio station KFH in Wichita on November 17, 1967, on a program called "NEWSLINE"; that "NEWSLINE" is a program with a Moderator and a guest where, after a discussion of a particular subject, the radio listeners call in and ask specific questions which the guest answers.

"On this particular occasion the panel finds that respondent discussed the arrest or detention of his clients, as to how and when they were detained, questioned or arrested; the actions of the officers in arresting and interrogating them; commented on his opinion as to the law as to what constitutes arrest; and as to the law of what constitutes a threat on the life of the President of the United States.

"The panel finds that there was litigation pending at the time of the action, one man being arrested and under $25,000.00 bond for threatening the life of President Johnson.

"The panel also finds that respondent used poor judgment in appearing on the program, that the tenor of his comments and the program might be interpreted as an attempt to gain public support for his clients' cause and in such manner to influence the public in litigation which might be commenced in the immediate future and influence the public in supporting the release of the one arrested S. D. S. member.

"The panel finds that the numerous references to respondent's profession as an attorney—or as 'Attorney Jim Nelson' could have no effect other than indirect solicitation of law business.

"The panel, therefore, concludes that respondent has violated Canons 27 and 20."

The respondent objects to the conclusion reached on the following ground:

"The Respondent did not represent the defendant in the federal court matter then or at any other time, had not relinquished his First Amendment rights, and would have been remiss under his oath as a lawyer if he had not spoken out, as vigorously as possible, under the circumstances of the illegal and atrocious actions of the Wichita police toward the witness, so-called, in this matter."

The respondent stated in the radio broadcast—"my information comes from my clients primarily." His clients were four persons who were being held for questioning in connection with the arrest of an individual for threatening the life of President Johnson.

It would serve no useful purpose to present and discuss the entire text of the radio program. It will suffice to state that the findings and conclusions of the panel were amply sustained by the record before it.

The respondent contends that the charge in Count III did not include the accusation of "advertising" and that, therefore, such a finding by the board was improper. We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. It is not required that the complaint contain a reference to the specific canon of ethics which may have been violated.

The panel recommended to the State Board of Law Examiners that the respondent be disciplined by suspension for six months.

The State Board reported to this court in part as follows:

"To the Honorable, the Justices of the Supreme Court:

"The State Board of Law Examiners respectfully reports:

"That, pursuant to the Rules of this Court, a hearing was held on complaints received from the Wichita Bar Association;

"That a panel composed of D. H. Corson, Jr., William Y. Chalfant and Perry Owsley (presiding) submitted its report to the Board as a whole at its meeting on February 9, 1970;

"That after discussion and consideration of the complaint and report the Board was of the opinion that the report of the hearing panel should be adopted, but that the discipline recommended to the Court should be public censure;"

We accept without comment the change made by the State Board of Law Examiners in the panel's report from discipline by suspension to public censure and concur in the aforesaid findings and recommendations of the Board.

We do, for his future guidance, call respondent's attention to the general conclusion adopted by the Board as follows:

"The panel believes that an examination of the records as a whole show respondent's general attitude to be one of little respect for the rights and sensibilities of others, of little respect for the Police and Courts, and extreme over-zealousness on his part in defending his clients. . . ."

It is therefore by the court considered, ordered and adjudged that James I. Nelson be and he is hereby censured by this court.