No. 46,582

STATE OF KANSAS, *Petitioner* v. JAMES I. NELSON, *Respondent*

(504 P. 2d 211)

Opinion filed December 9, 1972.

*Curt T. Schneider,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, and *Edward G. Collister, Jr.,* Assistant Attorney General, were with him on the brief for the petitioner.

*Michael G. Gragert,* of the Legal Aid Society of Wichita, Inc., argued the cause, and *Stephen J. Baylock,* of the same Society, was with him on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline.

The respondent, James I. Nelson, took exception to the recommendation of the State Board of Law Examiners (hereinafter referred to as the Board) that he be suspended from the practice of law for an indefinite period for violation of Nos. 1 and 8 of the Canons of Professional Ethics adopted by the American Bar Association (198 Kan. XVII, XVIII [now Supreme Court Rule No. 501]), more specifically Disciplinary Rules DR 1-102 (A) (5) and DR 8-102 (B) of the Code of Professional Responsibility. (205 Kan. lxxvii, xci.)

The complaint against respondent stems from a previous appearance of respondent before this court, reported in *State v. Nelson,* 206 Kan. 154, 476 P. 2d 240. In that case respondent was charged with five counts of misconduct in a complaint filed with the Board. Respondent was found guilty by the Board of the charges alleged in Counts II and III of the complaint. In its report to this court the Board recommended that the discipline should be public censure. In Counts II and III referred to, respondent was respectively charged with fraudulently misrepresenting himself as a detective and, in a radio broadcast, discussing litigation which was then pending in the United States District Court for the District of Kansas. Our opinion in *State v. Nelson,* supra, reflects that the evidence before the Board in support of the convictions on Counts II and III was clear and satisfactory. The report by the Board was accepted and its findings and recommendations were concurred in by this court.

Our decision in *State v. Nelson,* supra, was handed down on November 7, 1970. On the same day respondent was contacted by telephone about 4 p. m. by Bruce Sankey, a reporter for the Wichita Eagle-Beacon. Mr. Sankey prepared an account of his interview with respondent which was published on November 8, 1970, as follows:

"Exhibit 'A'

"Sunday, November 8, 1970.

"Public Censure 'Compliments' Wichita Lawyer

"A Wichita attorney publicly censured Saturday by the Kansas Supreme Court, says he will appeal the action to the federal courts.

"James I. Nelson, 52, of 4141 Regents Lane, was censured by the high court for violations of the canons of legal ethics.

"Nelson, contacted by telephone Saturday evening, said: 'I did absolutely nothing wrong and they damn well know it.'

"A Special Panel of the State Board of Law Examiners found that Nelson had 'solicited' law business and had a 'general attitude to be one of little respect for the rights and sensibilities of others, of little respect for the police and courts, and an extreme overzealousness on his part in defending his clients.'

"Nelson said he felt 'complimented' by the allegations.

" 'I have very little respect for the police and the courts; that's absolutely true. And I am very zealous in defending my clients but I do it very ethically,' he maintained.

"Asked why he disrespects police and courts, Nelson replied: 'Because the police are headbeaters and they arrest people illegally about as often as they do legally. I think they commit more crimes per man than the worst of our criminals.

" 'The Courts are commonly prejudiced and they're much more concerned with who appears before them than what the facts are, and the law is.'

"The law examiners panel recommended Nelson be suspended for six months, but the entire board rejected this and recommended instead that he be punished by public censure. The court approved this recommendation and censured the attorney."

The newspaper account does not, with any degree of accuracy, reflect the decision of this court or that of the Board. As we have noted, respondent was found guilty of only two of five charges, *i. e.,* misrepresenting himself to be a detective and publicly discussing a case then on trial. While respondent, in Count I was charged with making statements which were alleged to be disrespectful and unjustly critical of courts in Wichita, he was not found guilty on either aspect of the charge. As our opinion in *State v. Nelson,* supra, reflects, respondent was only warned to

show caution in the future with respect to statements and conduct of this sort.

Whether the discrepancies between the newspaper account and our decision resulted from misstatements by respondent or a misconception of the opinion by the reporter is not shown by the record herein. Since the decision had just been announced when Sankey called respondent, it could well be that this was respondent's first notice of the decision. In any event, respondent's responses to Sankey's questions appear to be his immediate reaction to the decision on appeal in the prior case wherein he personally was the unsuccessful litigant—a circumstance which we have given consideration in arriving at our conclusion in this case.

Following publication of the newspaper account, a complaint was issued and subsequently came before a three member panel of the Board which found that respondent had violated two sections of the Code of Professional Responsibility (Rule No. 501, [205 Kan. lxxvii, xci]) namely, DR 2-102 (A) (5) "Engage in conduct that is prejudicial to the administration of justice" and DR 8-102 (B) "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

Respondent states his position in the form of four issues which he says are to be determined by this court. They are:

"1. Can Respondent be disciplined for critical comments made of the judicial system following the final disposition of the case prompting such remarks?

"2. Does DR 1-102 (A) (5) create an impermissible infringement and chilling effect on First Amendment freedoms because of vague and over-reaching construction?

"3. Is Respondent being impermissibly punished for his beliefs?

"4. Were Respondent's comments libelous, under existing constitutional standards, and were they made with knowledge of their alleged falsity, if they were neither libelous nor knowingly made, can Respondent be disciplined for their utterance?"

We shall pass, for the moment, issues one and two, which we believe involve the crucial questions in this case and consider briefly respondent's arguments in support of his issues three and four.

With respect to issue three, respondent argues that the word "prejudicial" as it appears in DR 1-102 (A) (5) is unconstitutionally vague and casts a "chilling effect on First Amendment freedoms." Respondent's position is unsupported in both instances. The word "prejudicial" is universally found throughout the legal and judicial

system. Specific definitions are found in any dictionary. In *Prunty v. Light Co.*, 83 Kan. 541, 108 Pac. 802, this court, referring to Webster's Universal Dictionary, defined prejudicial as "hurtful," "injurious," "disadvantageous." It cannot be seriously contended that "prejudicial" does not sufficiently define the degree of conduct which is expected of an attorney.

Concerning respondent's argument that DR 1-102 (A) (5) creates an impermissible and chilling effect on "First Amendment freedoms," an examination of decisions on the point (12 A. L. R. 3d, Anno., p. 1408) reveals the consensus to be that an attorney's rights to free speech is tempered by his obligation to both the courts and the bar, an obligation to which ordinary citizens are not held. In the case of *In re Sawyer*, 360 U. S. 622, 3 L. Ed. 2d 1473, 79 S. Ct. 1376, the last case in which the United States Supreme Court addressed itself to the subject, it appears that at least five justices agreed that the right to free speech may not be invoked to protect an attorney against discipline for unethical conduct.

The point made by respondent with respect to his declaration in issue four is that the charge that respondent's statements violated DR 8-102(B) that "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officers" in essence states that respondent's expressions were libelous in nature and thus must be measured by standards prescribed in *New York Times Co. v. Sullivan*, 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. It appears respondent's argument is that if his statements were not libelous within the "actual malice" rule announced in the *New York Times* case, then they were not sufficient to subject him to discipline. This argument is untenable for several reasons. First, the *New York Times* case and the supporting line of cases cited by respondent in his brief, are clearly inapplicable to a disciplinary proceeding because those cases are defamatory actions and deal with the constitutional privilege afforded news media. As an individual, respondent has no constitutional privilege to defame. (*Beauharnais v. Illinois*, 343 U. S. 250, 96 L. Ed. 919, 72 S. Ct. 725.) Second, it is widely recognized that neither civil nor criminal liability is necessary to maintain an action in a disciplinary proceeding. (*In re Smith*, 73 Kan. 743, 85 Pac. 584; *Phipps v. Wilson*, 186 F. 2d 748, [7th Cir. 1951]; *Wilbur v. Howard*, 70 F. Supp. 930, [1947]; 7 Am. Jur. 2d, Attorneys at Law, § 38, p. 66.)

Some of respondent's argument in support of what he declares as issue two deserves consideration. Respondent says that even

though it is assumed that courts have the power to limit the expressions of an attorney regarding a case pending before the court, on the grounds that such statements could be prejudicial to the outcome of such case, there is no basis to justify limiting the comment of any person, including an attorney, regarding the court or its officials after the case in question has been disposed of. We cannot agree with the proposition in the absolute form in which it is stated by respondent, however, we recognize that there is a well-defined distinction, in disciplinary proceedings, between statements made by an attorney with reference to a case pending and one that has been finally decided. (*In re Sawyer,* supra.)

Usually, statements by an attorney referring to a pending case which amount to misconduct give rise to proceedings in contempt. Posttrial criticism of a decision or the court in which it is made, if it transcends the limits of permissible conduct established in a particular jurisdiction involved, may give rise to either contempt or disciplinary proceedings. The instant case is a civil proceeding in discipline, as distinguished from a matter in contempt.

Since our decision on November 7, 1970, (*State v. Nelson,* supra.) terminated the case referred to by respondent in his interview, we do not believe a violation of DR 1-102 (A) (5) is clearly shown. The prohibition of DR 1-102 (A) (5) is conduct that is prejudicial to the administration of justice. Since the case was terminated, respondent's statements can not serve as harassment or intimidation for the purpose of influencing a decision in the case involved. This is not to say that we find fault with the factual findings of the Board's panel in this regard. We do not believe the findings establish a violation under the circumstances of the instant case. As pointed out by the panel, respondent submitted no corroborative evidence whatsoever in support of the truth or accuracy of his statements quoted in the newspaper account. Respondent's defense consisted entirely of his own assertions concerning instances in which he believed the actions of certain courts showed prejudice. His testimony at the panel hearing consisted to a considerable extent of vilifying and abusing judges and lawyers of the Wichita area, including a member of the panel. He submitted no evidence, documentary or otherwise, in corroboration of his statements and his conduct before the panel, as it is shown in the record, was reprehensible and unprofessional. However, respondent's conduct, on that occasion, is not the basis of the charges before us. On the

point under discussion, our consideration is limited to the issue whether the newspaper account, under the attending circumstances, which we have pointed out, amounts to conduct that is prejudicial to the administration of justice. After careful consideration, we have concluded that our answer should be in the negative.

We turn then to what appears to be the crux of this proceeding. Did the statements of respondent, as shown in the newspaper account, amount to knowingly made false accusations against a judge or other adjudicatory officer, as proscribed by DR 8-102 (B)? DR 8 (ABA Standards, Code of Professional Responsibility) relates to Canon No. 8 which reads: "A Lawyer Should Assist in Improving the Legal System." Ethical Consideration [EC] 8-6 exemplifies DR 8 in the context of the language in Canon No. 8 with respect to the question here. In pertinent part it reads:

". . . Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticism, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified." (ABA Standards, Code of Professional Responsibility, p. 107.)

Generally, courts are in agreement that while a lawyer may, in a proper tone and through appropriate channels, attack the integrity or competence of a court or judge, or the propriety of any particular judicial act, he may not, by unfounded charges, create disrespect for courts or their decisions and if he does so he may be properly disciplined. Attorneys have wide latitude in differing with, and criticizing the opinions of the courts, yet when they resort to misrepresentation and unwarranted assaults on the courts whose officers they are, they violate their duty and obligation and are subject to discipline. (7 C. J. S., Attorney and Client, § 23, p. 752.)

Many years ago a guideline for this court was established in *In re Pryor*, 18 Kan. 72. Justice Brewer speaking for the court said:

". . . For no judge, and no court, high or low, is beyond the reach of public and individual criticism. After a case is disposed of, a court or judge has no power to compel the public, or any individual thereof, attorney or otherwise, to consider his rulings correct, his conduct proper, or even his integrity free from stain, or to punish for contempt any mere criticism or animadversion thereon, no matter how severe or unjust. . . .

"We remark again, that a judge will generally *and wisely* pass unnoticed any mere hasty and unguarded expression of passion, or at least pass it with

simply a reproof. It is so that, in every case where a judge decides *for* one party, he decides *against* another; and ofttimes both parties are beforehand equally confident and sanguine. The disappointment therefore is great, and it is not in human nature that there should be other than bitter feeling, which often reaches to the judge as the cause of the supposed wrong. A judge therefore ought to be patient, and tolerant of everything which appears but the momentary outbreak of disappointment. . . ." (p. 76.)

*Pryor* was a contempt proceeding, nonetheless we think the wise words of Justice Brewer are appropriate and worthy of consideration in the case at bar.

We turn then to the question, what should our judgment be? As we have previously noted, the statements of respondent were in response to questioning by a reporter who sought out respondent soon after the decision was announced in litigation in which respondent was the losing litigant. Respondent's statements, while admittedly unprofessional, were general in nature and directed broadly at all existing law enforcement and judicial institutions. Reporter Sankey, on direct examination, quoted respondent as saying "I did absolutely nothing wrong and *I* damn well know it." On cross-examination Sankey changed his testimony, stating that respondent's comment was "I did absolutely nothing wrong and *they* damn well know it," as it appeared in the published account.

The discrepancy in Sankey's testimony was not explained or resolved. The difference in the import of the two versions is substantial. The first is only respondent's declaration of his own belief in his innocence; while in the second respondent not only professes his innocence but claims that this court and/or the Board was aware of said innocence in the prior proceeding. On this point the evidence falls short of the required clear and satisfactory proof. (*In re Phelps*, 204 Kan. 16, 459 P. 2d 172; and *In re Ratner*, 194 Kan. 362, 399 P. 2d 865.)

In a disbarment proceeding in the case of *State v. Kirby*, 36 S. D. 188, 154 N. W. 284, wherein disparaging statements of an attorney were published, the South Dakota court was confronted with an analogous situation. The court said:

"Believing that the misconduct of which defendant stands charged does not, when considered alone, show the defendant so unfitted to be an attorney of this court as would authorize a judgment of disbarment; believing that, in all else, save perhaps that one matter in respect to which he seems to be suffering an illusion, defendant will hereafter act toward this court with all due respect; believing that suspension of his rights as an attorney would not hasten the time of his disillusion, the only fact that would warrant such suspension; and

believing that the public, whose servants we are and whose best interests we seek to promote will approve of our giving to defendant the benefit of any doubt we may have as to what our judgment should be: We are of the opinion that the disbarment proceeding should be dismissed. . . ." (pp. 209, 210.)

The instant case presents a situation anomalous to the ordinary disciplinary proceeding based upon disrespectful conduct of an attorney. Here respondent himself—rather than a client—was the losing party in litigation involving respondent's standing as an attorney, a situation replete with emotion and acrimony. Respondent did not instigate the interview—rather he was sought out by a reporter seeking a news story with respondent's immediate reaction to the unfavorable decision as the subject matter. Taking into account the circumstances enumerated, which we believe to be mitigating together with the fact that the statements attributed to respondent were generally in broad terms—rather than in the form of specific accusations; we have concluded that discipline is not warranted.

The proceeding is dismissed.

OWSLEY, J., not participating.