No. 47,592

STATE OF KANSAS, *Petitioner*, v. H. LEE TURNER, *Respondent*.

(538 P. 2d 966)

Opinion filed July 17, 1975.

*Michael C. Cavell*, assistant attorney general, argued the cause, and *Curt T. Schneider*, attorney general, was with him on the brief for the petitioner.

*William A. Hensley*, of Turner & Hensley, Chartered, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline against the respondent, H. Lee Turner. Mr. Turner is a member of the bar of this state. Since 1952 he has been engaged in the practice of law in Great Bend, Kansas.

In the fall of 1973 an amended complaint with four counts was filed against Mr. Turner. At a hearing before a three-man hearing panel of the State Board of Law Examiners, counts I, II and IV were dismissed. As to count III, the panel found respondent had violated the Code of Professional Responsibility, Supreme Court Rule No. 501, 214 Kan. lxxv-ciii, and recommended discipline by public censure.

Count III of the complaint is drawn in the following language:

"In the case of *Cheryl K. Smith v. Dorothy I. Cropp*, in the District Court of Barton County, Kansas, No. 23680, H. Lee Turner did during the trial of such case, while acting as plaintiff's counsel, verbally abuse and improperly attack defense counsel and did interject improper statements during the examination of witnesses."

As to count III the hearing panel concluded that "respondent as attorney for plaintiff in the case of Smith vs. Cropp, District Court of Barton County, Kansas, was in violation of the code of professional responsibility [hereafter referred to as the Code] in that:

"1. He did engage in conduct during the course of that trial [Smith v. Cropp] that is prejudicial to the administration of justice, contrary to the provisions of DR 1-102 (A) (5); and

"2. He did engage in undignified and discourteous conduct which is degrading to a tribunal in violation of DR 7-106 (C) (6)."

The Board of Law Examiners approved the report of the hearing panel, denied a motion for rehearing and recommended that respondent be disciplined by public censure. The respondent has

filed exceptions to the report, findings and recommendations of the Board, as is authorized in Supreme Court Rule 208 (c) (2) (214 Kan. lix). In this posture the matter came before this court and was set for hearing. Comprehensive briefs have been submitted, oral arguments have been presented, and the cause now stands for decision.

The charge in count III grows out of the respondent's conduct during trial of a civil action, *Cheryl K. Smith v. Dorothy I. Cropp,* No. 23,680, in the district court of Barton County, Kansas, the Honorable Herb Rohleder presiding. The plaintiff recovered a large judgment. The defendant appealed to this court where the action was revived against James L. Blakey, administrator of Mrs. Cropp's estate. On appeal the judgment was reversed, the opinion being reported as *Smith v. Blakey, Administrator,* 213 Kan. 91, 515 P. 2d 1062. One of the grounds of reversal was misconduct on the part of the plaintiff's counsel, Mr. Turner. We will refer to this case as *Smith* or the *Smith* case.

Judging from the files of the present proceeding it appears the state introduced no testimony, either oral or by deposition, offering only the record, the briefs and the opinion in the *Smith* appeal. The record in that appeal is replete with language used by Mr. Turner which the Board deemed was improper and abusive of opposing counsel, Mr. James Mize. Many of the offensive utterances were in connection with objections interposed during Mize's examination of witnesses and they culminated in respondent's final summation to the jury. We will not burden the body of this opinion with a verbatim account, but a representative sampling of respondent's language as well as verbatim portions of his final summation are attached in a short appendix.

Mr. Turner filed eight exceptions to the Board's report. They are copiously covered in his brief and pertain to matters both of substance and of procedure. Consideration will be given each, seriatim.

Point one is essentially directed toward the sufficiency of evidence and related peripheral matters. The respondent correctly points out that Supreme Court Rule 207 (1), 214 Kan. lviii, requires that charges of misconduct be established by substantial, clear, convincing and satisfactory evidence. This rule asserts our case law as expounded in *In re Ratner,* 194 Kan. 362, 366, 399 P. 2d 865, *In re Phelps,* 204 Kan. 16, 17, 459 P. 2d 172, and earlier cases cited therein. We cannot agree, however, that the evidence before

the panel was insufficient to establish the verbal statements on which count III was based. Those statements, alleged to be abusive and improper, were clearly reflected in the appellate record filed in the *Smith* case.

Respondent argues however that while the *Smith* appellate record was admitted in the evidence, its contents were hearsay, citing *The People v. Amos*, 246 Ill. 299, 92 N. E. 857. *Amos* is easily distinguished since the record in that case contained testimony of witnesses concerning the conduct of the attorney, Amos. The *Smith* record is a cat of a different breed; it reflects directly what the respondent himself said, not what other parties said he said. The Illinois Supreme Court recognized this distinction in the later case of *In re Ellis*, 371 Ill. 113, 20 N. E. 2d 96, where a transcript which recorded the attorney's testimony in a civil action, was admitted as evidencing an admission against interest on his part. The rule espoused in *Ellis* was followed in *In re Nelson*, 79 N. M. 779, 450 P. 2d 188, where the respondent objected to the use of his own testimony in a former civil action. The New Mexico court said:

"The objection is not well taken. The transcript was admittedly correct and complete, it is fully proper, and, if admissible for no other reason, it is certainly admissible as an admission by a party against his interest and therefore competent evidence. . . ." (p. 781.)

Not only was the appellate record in Smith competent and sufficient evidence to support the findings of the panel, but the respondent himself, in his testimony, freely admitted having made many, if not all, the statements attributed to him. As we view the record in this disciplinary proceeding there is no lack of substantial competent evidence on the substantive issue of what statements were made by respondent during the *Smith* trial.

In his brief, the respondent insists that the state took the position that the reversal of *Smith v. Blakey, Administrator*, supra, was conclusive as to the issue of "conduct that is prejudicial to the administration of justice." We know not what stance the state took at the hearing, but we do not understand its present position as being that *Smith v. Blakey, Administrator*, supra, is *res judicata* so far as this disciplinary proceeding is concerned. Nor did this court intend, in *Smith*, to pronounce judgment as to the respondent's ethics, as we believe was made clear in the language on page 96:

". . . We are not concerned in this proceeding with discipline for violations of our Code of Professional Responsibility (Kansas Supreme Court

Rule No. 501, 209 Kan. lxxiv), except as the actions which may constitute violations relate to the issue of a fair trial. . . ."

The respondent asserts that fidelity to his client's cause impelled him to employ harsh tactics. In this connection he has cited the opinions expressed by two eminent and respected members of the district bench, the Honorable Albert B. Fletcher, Jr. and the Honorable C. E. Birney, who testified that under the attending circumstances—which they indicated were provocative and due in large measure to the failure of the trial judge to keep the trial fully under control—the conduct of Mr. Turner did not contravene provisions of the Code.

True it is, that lawyers are enjoined to act with fidelity to the cause of their clients. Canon 7 of the Code recites: "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law." Mr. Turner, in representing Mrs. Smith in her lawsuit for personal damages sustained in a car accident, vigorously contended that opposing counsel employed by the insurance carrier to represent the insured was improperly protecting her best interests because of a conflict of interest on his part. Moreover, the respondent asserted that Mize was violating an order *in limine*.

We will not go into the merits of Mr. Turner's complaints against Mr. Mize, or to the controversy which boiled between them. Suffice it to say that Canon 7 does not countenance unrestrained zeal on the part of an advocate; his ardent zeal, commendable in itself, is to be exercised within the bounds of the law. We do not apprehend, as respondent seems to fear, that the decision of the Board, logically extended, would subject a zealous advocate to charges of misconduct whenever he might cause or contribute to trial error. The question posed in this proceeding is not whether error inhered in the *Smith* trial but whether respondent was guilty of unprofessional conduct. The Board found, in effect, that the respondent had exceeded permissive legal limits.

In the disbarment action of *In re Macy*, 109 Kan. 1, 196 Pac. 1095, Mr. Macy was charged, among other acts of impropriety, with having filed an answer accusing the plaintiff, a Liberal attorney, of criminal conduct. The court's language is expressive:

"It is an attorney's duty to protect the rights of his client, but it is likewise an attorney's duty to refrain from doing an intentional wrong to the adverse party. . . . An attorney at law in the preparation and trial of an action in court represents his client, but he does more than that—he is there, not only as an advocate, but also as a person trusted and authorized by the state to assist the court in determining what is right between the parties

before it. He cannot excuse himself by saying that his duty to his client demands that he adopt a line of conduct detrimental to the interests of the public. . . ." (p. 8.)

Certain Ethical Considerations (EC) approved by this court in principle are pertinent at this point:

EC 7-10 The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

EC 7-37 In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer in his conduct, attitude, and demeanor towards opposing lawyers. A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.

EC 7-38 A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so. A lawyer should be punctual in fulfilling all professional commitments.

These Ethical Considerations set the tone for the conduct expected of lawyers toward trial adversaries. Open disrespect shown for an opposing attorney coupled with personal attacks upon him throughout trial proceedings may not only bring reproach upon the profession of the law but may disrupt the orderly progress of the trial itself, distracting attention from the ultimate objective to be attained, *i. e.*, the arrival at a just decision after a fair trial.

Lawyers are enjoined by DR 7-106 (C) (6) to refrain from engaging in undignified or discourteous conduct which is degrading to a tribunal. As to this requirement, respondent replies he was not discourteous to the trial court. While the record in *Smith* does not reflect discourtesy to or disrespect for the trial judge, as such, we believe that a "tribunal", as that term is contemplated by the Code, comprehends more than the judge himself; it includes the entire forum, the entourage, the setting in which the proceedings are being conducted. "Tribunal" is variously defined in both lay and legal dictionaries as the seat of a court; the place where justice is administered; a court or forum of justice. Although respondent's verbal thrusts were not directed toward the judge, we view them nonetheless as inconsistent with the decorum required in court proceedings. Indeed, inflammatory remarks have no legitimate place in judicial proceedings. In *Forsyth v. Church*, 141 Kan.

687, 42 P. 2d 975, the plaintiff's counsel in his closing argument, referred to witnesses as liars and ridiculed them. Of such tactics the court said:

"These inflammatory appeals are not in keeping with the decorum that counsel should observe in a court that is settling the rights of parties, and it is condemned as erroneous. . . ." (p. 690.)

We have previously mentioned the testimony of the two district judges who appeared on respondent's behalf. Both were highly critical of the trial judge in permitting Mr. Mize to continue serving as trial counsel for Mrs. Cropp, and in failing to maintain control over the trial proceedings. Both were of the opinion that under the provoking circumstances which were present the respondent did not exceed the outer limits of propriety.

While provocation may be an extenuating circumstance to be considered in assessing penalty it can hardly be said to justify a violation of the Code. The trial panel concluded that "Notwithstanding the respected opinions of District Judges Fletcher and Birney, and notwithstanding the somewhat questionable position of defense counsel, Mize, in the trial of the case of Smith vs. Cropp, the evidence . . . as revealed by the record on appeal and the transcript of the trial in the district court, is clear and convincing that respondent as attorney for the plaintiff . . . was in violation of the code of professional responsibility." We cannot dispute this conclusion. Members of the Board are themselves lawyers with long experience in trial practice. We believe that they, as well as trial judges, are experts in that area, and that they are entitled to draw on their own expertise as well as considering the opinions expressed by members of the bench.

Mr. Turner next contends he was denied procedural due process. The gist of his argument is, first, that count III did not set forth the charge with sufficient particularity to apprise him of the alleged misconduct and by reason thereof he was unable to prepare for his defense. In the recent case of *State v. Alvey*, 215 Kan. 460, 524 P. 2d 747, we spoke of a similar contention in this wise:

"Since it is incumbent on an attorney to know the disciplinary rules regulating his profession we must conclude that the failure of the State Board of Law Examiners to set forth the specific disciplinary rules violated by respondent cannot be a basis for avoiding *discipline*. This is in accord with our statement in *State v. Nelson*, 206 Kan. 154, 476 P. 2d 240:

"'. . . We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. It is not required that the

complaint contain a reference to the specific canon of ethics which may have been violated.' (p. 157.)" (p. 464.)

. . . . . . . . . . . . .

". . . It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result. . . ." (p. 466.)

This rule is followed in other jurisdictions. In *Bar Ass'n v. Cockrell,* 270 Md. 686, 692, 313 A. 2d 816, it was held that a rule providing charges be in writing and be sufficiently clear and specific reasonably to inform the attorney of the alleged misconduct does not require charges be set forth in any certain form or extensive detail.

Neither *State v. Berkley,* 214 Kan. 571, 520 P. 2d 1255, nor *Re Ruffalo,* 390 U. S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222, supports the respondent's claim. In *Berkley,* the respondents were found guilty of offenses with which they had not been charged, and we entered judgment in their favor.

Ruffalo was found guilty on a count which was added to the original charges after he had testified in the hearing. The added charge was based on Ruffalo's testimony. In reversing a judgment barring Ruffalo from practice before the federal courts, the United States Supreme Court said he had been deprived of procedural due process.

We believe the language of count III was sufficient to apprise the respondent of the incidents out of which the alleged misconduct arose.

While the panel hearing was in progress, the *Smith* case had not been tried on remand; it was still pending, and Mr. Mize remained as defense counsel. (We were advised at oral argument the case has since been settled.) Because of the attorney-client privilege, Mr. Turner contends he was prejudiced and deprived of due process, first, in being unable to depose Mr. Mize before trial and second, in being deprived of using Mize as a witness at the hearing. It is true that in attempting to depose Mr. Mize, the respondent was thwarted by repeated objections interposed by Mize's counsel, invoking the privilege. The record reveals the attorney-client privilege was also invoked at the panel hearing.

Although the Mize testimony may have been unavailable while the *Smith* case was pending, we believe Mr. Turner is in no position to complain. At the beginning of the panel hearing, repeated offers were made to continue the hearing until after the *Smith* case "has

been finally resolved." The offers were refused in no uncertain terms, respondent's counsel declaring at one point, "we must strenuously object to this continuance that is being considered by the panel. . . ." In our opinion, respondent waived any right to object on this ground.

The respondent also moved for a public trial and he complains of its denial. A proceeding in discipline is not an action within the purview of K. S. A. 60-104 providing that *trials* be conducted in open court. In the early case of *In re Burnette*, 73 Kan. 609, 85 Pac. 575, we said that the remedy of disbarment was not an action, either criminal or civil, but a special proceeding for the protection of the courts, the legal profession and the administration of justice. An attorney at law is an officer of the court and as such is a part of the judicial system of the state. (*State, ex rel., v. Perkins,* 138 Kan. 899, 903, 28 P. 2d 765.) Thus, a proceeding to discipline an attorney is not held to punish him but is conducted under the inherent power of the court to provide for the protection of the judicial system and the administration of justice. (*In re Gorsuch,* 113 Kan. 380, 384, 385, 214 Pac. 794.)

In *State, ex rel. Oklahoma Bar Association v. Brandon,* 450 P. 2d 824, 828, (Okl.) the Oklahoma court stated:

". . . This court has consistently held that disbarment proceedings are inquiries for the protection of the courts, the public and the profession, and that strict rules of procedure should be relaxed to the end that an attorney's fitness to continue in the profession should be determined on the legal and ethical merits."

Although the rudimentary requirements of due process must be observed in disciplinary proceedings, we are satisfied that a public hearing is not essential. In regard to public hearings in discipline matters, the Supreme Court of Kentucky had this to say:

"We fully appreciate the principle of public trial. There is, however, an erroneous tendency today to equate all rights with those that are guaranteed to a defendant in a criminal prosecution, and we are not convinced that a public trial is necessary in a disciplinary inquiry conducted by the bar association. Publicity cuts both ways. Sometimes the desirabilty of having it is outweighed by the desirability of protection from it, as in juvenile matters. Usually it is the respondent himself whose protection from it is sought in a disciplinary case, but quite often there are others whose protection is equally important. . . . Under the circumstances, we cannot say that public hearing would have been desirable, and we have not been referred to any authority holding that they may be required as a matter of right." (*Kentucky State Bar Association v. Taylor,* 482 S. W. 2d 574, 577, (Ky.).

For the fifth exception respondent asserts that the proceedings were in violation of Rule 209 (*a*) (214 Kan. lix):

"(*a*) All proceedings, reports and records of disciplinary investigations and hearings other than proceedings before the Supreme Court shall be private and shall not be divulged in whole or in part to the public except by order of the Court."

The respondent's contention that privacy was violated strikes us as being somewhat inconsistent with his demand for a public hearing. Be that as it may, respondent maintains the Board violated its own rules in permitting the complainants in other counts of the amended complaint to review the entire complaint which included, of course, count III. It is argued the rule of confidentiality was thereby breached.

No prejudice has been pointed out which can be traced to this alleged breach. That the Board may have circulated the amended complaint among all complainants would not of itself, in our opinion, vitiate either the panel report or the Board's action adopting the same. Moreover, it might be stretching words to say that in sending the amended complaint to the few persons interested therein would amount to making it public property. We find no merit in point number five.

Respondent next complains he was not afforded the right to confront his accusers. He would thus equate this proceeding to a prosecution for crime. We have already said a proceeding in discipline is not a criminal proceeding. Hence, use of the word "accuser" is hardly justified.

In the California case of *In Re Mazuran,* 88 Cal. App. 272, 276, 277, 263 Pac. 339, the respondent urged he was denied his constitutional right of confrontation since whoever verified the complaint was not called as a witness. As to this claim the court said:

"We deem the contention of little merit. No authority supports the claim. Appellant cites the time-honored provisions of the constitution to the effect that every person accused of crime shall have the right to be confronted with the witnesses against him. Without further comment we hold the argument unsound."

To the same effect, see *Ex Parte Messer,* 228 Ala. 16, 152 So. 244.

As to this proceeding we note that Earl H. Hatcher, Disciplinary Administrator, signed the amended complaint "BY ORDER OF THE STATE BOARD OF LAW EXAMINERS" and we are advised in Mr. Turner's brief that in proceedings held November 28, 1973, Mr. Mark Bennett, Chairman of the State Board of Law Examiners stated

that the Board was the accuser. We believe it implicit in our rules relating to discipline that the Board of Law Examiners may, on its own authority, inquire into the conduct of an attorney. Rule 204 (*b*) (214 Kan. lv) provides:

"(*b*) It shall be the further duty of every member of the bar of this state to report to the Board of Law Examiners or the Disciplinary Administrator any action, inaction or conduct which in his opinion constitutes probable cause for discipline of an attorney."

The respondent asserts, however, that the commingling of prosecution and adjudicative functions is a patent denial of due process. We have held otherwise. In *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P. 2d 614, Dr. Morra complained that the Board acted as an investigator, grand jury, prosecutor, judge and jury. With respect to his complaint, we said:

". . . We believe no prejudice may be presumed from the board's prehearing investigation or its directing that a petition be prepared. In *Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P. 2d 906, we held:

" 'A predetermination of an issue is not indicated because an administrative board makes an informal preliminary investigation before calling a formal hearing.' (Syl. ¶ 9.)" (p. 109.)

Similar expressions may be found in a recent decision emanating from the most high court in Washington. In *Withrow v. Larkin,* 421 U. S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456, the plaintiff sued the medical examining board of Wisconsin to prevent the board from conducting a hearing to determine whether he had engaged in prohibited acts and whether his license to practice medicine should be temporarily suspended. The basic issue was whether the board could act both in an investigative and an adjudicative capacity. The court held that the combination of judging and investigative functions was not of itself a denial of due process. On page 55, the principle was clothed in this language:

". . . The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing. . . ."

Much of what we have already said in reply to respondent's second exception is equally applicable to exception seven, wherein Mr. Turner avows that the phrases "engaged in conduct that is prejudicial to the administration of justice" and "engaged in conduct which is degrading to a tribunal" as being too vague and indefinite to support disciplinary action.

We have previously disposed of the contention that DR 1-102 (A) (5) is unconstitutionally vague; first, in *State v. Nelson,* supra, and

later in *State v. Martindale,* 215 Kan. 667, 671, 527 P. 2d 703. We see no need at this time to elaborate on what was said in those opinions.

So far as DR 7-106 (C) (6) is concerned, its language strikes us as plain enough to convey to an able trial lawyer the general idea of what is meant. The words employed are in ordinary daily use. Framed by the training and experience of twenty years trial practice the phraseology should not prove mysterious. In *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 765, 408 P. 2d 877, we spoke as follows:

". . . The test of determining whether a statute is vague and ambiguous is whether the language conveys a sufficient definite warning as to the prescribed [sic] conduct when measured by common understanding and practice. . . ."

Finally, the respondent avers the procedure followed in processing the charges did not conform to Rule 206, that is to say, no initial complaint was filed, no investigation conducted and no copy of a complaint was provided him prior to the amended complaint.

What, if any, irregularities may have inhered in the processing of the complaints forming the bases of counts I, II and IV are of no importance here, for those counts were dismissed. So far as count III is concerned, we find no fatal procedural defect. Supreme Court Rule 206 sets out certain procedural methods of investigating complaints, which may originate from many sources. It seems clear enough, however, from Rule 206 (*l*) that the Board may conclude from the nature of the complaint that an investigation is unnecessary, in which case the Board may set the matter for hearing.

A determination under 206 (*l*) would seem to have been in order so far as count III was concerned. That count concerned conduct which occurred during trial of a civil matter and the trial proceedings were of record. Further investigation would not seem to have been required to establish the nature of the respondent's statements, or the precise language said to be objectionable, for both were at hand and available in the transcript and the appellate record of the *Smith* case.

It is therefore by the court adjudged that H. Lee Turner be and he is hereby censured by the court. Costs of this proceeding are taxed to the respondent.

FROMME, J., not participating.

## APPENDIX

Throughout the entire trial, the respondent accused defense counsel of (1) being unethical, (2) trying to impeach his own client and proving her a liar, (3) bad faith, (4) trying to impeach honest answers, (5) putting words into the mouths of witnesses, (6) doing what the court had admonished him not to do, (7) playing dirty pool, (8) sandbagging witnesses, (9) trying to beat his client about, (10) abusing witnesses, (11) making untrue statements, (12) being in contempt of court, (13) perversion of justice, and (14) smear type tactics.

Respondent requested the court to admonish counsel and punish Mr. Mize, whom he frequently referred to as "the man from Salina", a neighboring city.

The following excerpts are from the respondent's opening and closing arguments in summation:

". . . [F]or the past three days you have witnessed an unprecidented [sic] assault by a lawyer against his own client attacking his client's credibility, trying to brand her as a liar, as concealing facts . . .

. . . . . . . . . . . . .

"What other tactics have they used in this case? The dirty, filthy insinuations they try to make through witnesses that have been sandbagged and approached and given half truths. They try to infer, you saw the witness yesterday said I heard the conversation something about being at the Normandy Room, dirty, the witness that saw a container in the car that no one else could see through but he knew there was some alcoholic beverage and all for the purpose of the smear type of tactics. . . . If those statements in any way contradict the sworn testimony of the witness Mr. Gassoway or Mrs. Gassoway, you can rest assured they would have been up here showing the statements to the witnesses and reading them to you but that is not their way, their way is the dirty, filthy insinuations in trying to evade the responsibility against the interest of their own client in this particular case.

. . . . . . . . . . . . .

". . . I am not going to ask for a show of hands on how many of you would like to go on a search party with Mr. Mize for truth and think you will be successful but in your own mind just ask yourselves that question. For example, he made the statement about the lack of wealth of the defendant and he told you that she's not here this afternoon because she is ill. Of course, she came I think shortly after noon she became ill and was as a matter of fact she was vomiting in a little room with the door open there and I told Mr. Mize about it and he stayed in that seat and did nothing. Cheryl's mother had to help her. That is the way it is, ladies and gentlemen of the jury.

"He talks about sympathy. What a word to come from Mr. Mize. . . . I am telling you here and now when you go into a jury room you make your hearts as hard as the heart of Jim Mize from Salina, Kansas and scratch sympathy out of your mind. . . ."