No. 60,478

In the Matter of MICHAEL W. FARMER, *Respondent*.

(747 P.2d 97)

Opinion filed December 11, 1987.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Louis F. Eisenbarth,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause and was on the brief for respondent.

*Per Curiam:* This original proceeding in discipline was filed by the Office of the Disciplinary Administrator against Michael W. Farmer, of Topeka, an attorney admitted to the practice of law in Kansas. The Kansas Board for Discipline of Attorneys found that respondent violated DR 1-102(A)(4) and (6); DR 2-106(A); and DR 7-102(A)(5) of the Code of Professional Responsibility. 235 Kan. cxxxvii-cxlviii. The hearing panel of the Kansas Board for Discipline of Attorneys unanimously recommended that the respondent be suspended from the practice of law. Respondent filed exceptions to the Board's report and the matter is before this court for review.

The facts as determined by the hearing panel upon which the recommended disciplinary action was based are as follows:

Naomi Freeman was injured in an automobile accident on September 14, 1984. Freeman, who suffers from a nervous disorder, was given a list of attorneys by the Topeka Resource Center for the Handicapped. From that list she chose the respondent. Freeman and the respondent entered into a written contract which provided that respondent would receive as attorney fees 40% of any amounts recovered by settlement. In March 1985, respondent told Freeman that an offer of settlement of $7,500.00 had been made. Freeman authorized the acceptance of the settlement, and told respondent that she wanted to make sure that her medical bills were paid.

Subsequently, Freeman went to respondent's office where she received a check in the amount of $1,257.65, representing her portion of the proceeds from the settlement. Respondent indicated to her what her medical expenses were and represented

that he would pay them. He had withheld $2,904.35 from the settlement proceeds for that purpose. Freeman testified that respondent never indicated he would attempt to compromise the medical bills, nor did they discuss or enter into any oral agreement in that regard. Thereafter, Freeman discovered that the Memorial Hospital bill and Dr. Patel's bill had not been paid in full. Upon inquiry, she learned that a $94.00 courtesy discount had been given by Dr. Patel at respondent's request.

Freeman then went to see respondent at his office. Accompanying Freeman was Mitch Cooper, the executive director of the Topeka Resource Center for the Handicapped. Freeman went to respondent's office because she did not know anything about the discounting of her medical bills. In response to her inquiry, respondent told Freeman that, when attorneys paid bills for people, the attorneys were often given a discount. Respondent made no mention of a prior agreement or understanding that he was to attempt to discount the medical bills and keep the difference. His position was that the discounts resulted from his efforts and, therefore, he was entitled to keep the amount discounted. At the end of the meeting, respondent gave Freeman a check for $94.00, saying that he knew the Freemans had a low income and could use the money, and that he liked to keep his clients happy.

Freeman later went to see her regular health care provider, Dr. Robert Holmes, in connection with another matter. The bill she received for this visit also showed that $62.00 of the bill in connection with her automobile injuries had been written off as a "bad debt." Freeman called the bookkeeper for Dr. Holmes, and asked if there was a mistake on her bill. Freeman then contacted other medical care providers, and discovered that the bills for their services had also been discounted. The respondent obtained the discounts by representing that Freeman's settlement was not adequate to pay her medical expenses. Respondent informed one health care provider that, because of the inadequate settlement, he could pay only one-half of the bill. He told another that if it would not accept 50% of the medical bill like everybody else did, it would get nothing.

Respondent maintained that he had an oral agreement with Freeman to take care of her medical bills for her and that he told Freeman his compensation for paying the medical bills would be derived from discounts received in compromising the bills.

Respondent's administrative assistant testified that a sufficient amount had been retained from the $7,500.00 received in settlement to pay all of Freeman's medical bills in full. She also testified that it would have taken her approximately one hour of time to send out the checks necessary to pay all of Freeman's medical bills in full.

At the time of the automobile accident, Freeman was riding in a van owned by the Topeka Resource Center for the Handicapped. Respondent received a check from Hawkeye-Security Insurance Company representing the personal injury protection (PIP) benefits for the Resource Center. The $2,000.00 check listed both respondent and Freeman as payees. Respondent told Freeman that he would retain the check and return it to the insurance company upon a successful settlement of the case with State Farm Insurance, the insurance company for the tortfeasor causing the accident. After the settlement of the case, respondent contacted Hawkeye-Security about the return of the $2,000.00 in PIP benefits. Respondent testified that he was told by Hawkeye-Security that it automatically paid one-third of the amount of the benefits to the attorney who recovered them. Respondent then retained $667.00 of the $2,000.00 check as his fee. He did not, however, make an accounting to Freeman of the $667.00 of insurance proceeds which he retained.

Respondent first argues that there is insufficient evidence to support the panel's findings that he violated the Code of Professional Responsibility. DR 1-102(A)(4) and (6) prohibit conduct "involving dishonesty, fraud, deceit or misrepresentation," and "other conduct that adversely reflects on his fitness to practice law." DR 2-106(A) forbids charging or collecting an "illegal or clearly excessive fee." DR 7-102(A)(5) forbids a lawyer in representing a client to "[k]nowingly make false statement of law or fact." Supreme Court Rule 225, 235 Kan. cxxxvii-cxlviii. Supreme Court Rule 211(f) states that a finding of attorney misconduct requires proof "by clear and convincing evidence." 235 Kan. cxxix.

Respondent argues that no clear and convincing evidence of disciplinary rule violations exists in the present case, relying upon his testimony and the testimony of an office worker who

allegedly overheard the conversations that he had an oral agreement with Freeman by which they agreed that he would attempt to compromise the medical bills. Respondent also argues that, in discussing Freeman's medical bills with her health care providers, he did not make any misrepresentations of fact.

In *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board "is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." In the present case, respondent's denial of the factual allegations against him does not compel the finding that there is no clear and convincing evidence of misconduct on his part. The evidence was undisputed that the settlement received on Freeman's behalf was more than sufficient to pay all health care providers in full. Respondent's administrative assistant testified that it would have taken her no more than an hour to send out checks paying all Freeman's health care providers in full.

However, instead of doing so, respondent contacted Freeman's health care providers to obtain discounts and, in so doing, misrepresented the true nature and extent of the settlement Freeman received in the case. He also misrepresented the fact that he had retained a sufficient amount of money to pay the medical bills in full and, in addition, told Freeman that he would pay them in full. On the basis of respondent's statements, the health care providers accepted a discounted payment, writing off the remainder as bad debts.

Freeman denied the existence of any oral contract by which she authorized respondent to obtain discounts on her behalf. Her testimony is corroborated by that of Mitch Cooper. Cooper testified that, when Freeman confronted respondent in his presence concerning the discounts, respondent defended the obtaining of the discounts, not on the basis of any alleged oral contract, but by asserting that he was entitled to them because he had worked to obtain them.

Respondent represented Freeman in connection with her automobile accident for a little over six months. The case was

settled before it became necessary to file a lawsuit. Respondent retained 40% of the $7,500.00 settlement as his fee, and $338.00 as out-of-pocket expenses. He also received a fee of $667.00 from the recovery of the PIP benefits, for which he made no accounting to Freeman, and retained an additional $950.00 from the discounts he obtained in his negotiations with Freeman's health care providers. Respondent's total fee was $4,617.00. Freeman received $1,257.65 as her share. Clearly, by any standard, the fee collected by respondent was excessive.

We hold there is clear and convincing evidence respondent violated DR 1-102(A)(4) and (6); DR 2-106(A); and DR 7-102(A)(5) of the Code of Professional Responsibility.

Second, respondent maintains that he did not receive a fair hearing before the disciplinary panel because the original complaint merely alleged violations of Canon 1, and at the hearing of the matter, the disciplinary administrator's office "orally amended" the complaint to include allegations of violations of DR 5-101(A) (235 Kan. cxlv) and DR 7-102(A)(5).

This court has held that it is incumbent upon every attorney to know the disciplinary rules regulating his profession, and that the failure of disciplinary authorities to set forth the specific disciplinary rules violated by an attorney is not a basis for avoiding discipline. *State v. Turner*, 217 Kan. 574, 579, 538 P.2d 966 (1975) (quoting *State v. Alvey*, 215 Kan. 460, 464, 524 P.2d 747 [1974]). Instead, the complaint is sufficient where it sets out the facts which underlie the charges of misconduct and places the attorney on notice as to what ethical violations might arise therefrom. The complaint need not contain an explicit reference to the specific disciplinary rules which might have been violated by the attorney. *State v. Turner*, 217 Kan. at 579-80 (quoting *State v. Nelson*, 206 Kan. 154, 157, 476 P.2d 240 [1970]); see *State v. Alvey*, 215 Kan. at 464. In the present case, the formal complaint filed by the disciplinary administrator sets forth the basic factual allegations against the respondent. The complaint is not so insufficient in its allegations that the respondent was prevented from realizing the nature of the charges against him. That the complaint does not set out the specific disciplinary rules which the respondent may have violated by his actions is not a ground for refusing to accept the findings of the discipli-

nary panel. The language of the complaint was sufficient to inform the respondent of the incidents which resulted in the charges of misconduct against him.

IT IS THEREFORE ORDERED that Michael W. Farmer be and he is hereby suspended from the practice of law in the State of Kansas for a period of one year from the 11th day of December, 1987, and that this order shall be published in the official Kansas Reports.

IT IS FURTHER ORDERED that respondent forthwith comply with the provisions of Supreme Court Rule 218 (235 Kan. cxxxii), that he take and pass the Multistate Professional Responsibility Examination, and that he pay the costs of this proceeding.

HOLMES, J., not participating.