No. 70,482

IN THE MATTER OF JOHN C. HERMAN, *Respondent.*

(869 P.2d 721)

Opinion filed March 4, 1994.

*Stanton A. Hazlett*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Mark F. Anderson*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause for respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against John C. Herman, an attorney admitted to the practice of law in Kansas. Four separate complaints were filed, cases No. B4956, No. B5116, No. B5118, and No. B5119, which were consolidated for hearing before the Kansas Board for Discipline of Attorneys (Board) and this court. The essential facts, as determined by the panel, and the panel's recommended discipline are not in dispute. Herman has admitted the allegations in all complaints. He states that his answer should be considered to be an admission under Supreme Court Rule 212(d) (1993 Kan. Ct. R. Annot. 180).

### Case No. B4956—The Floyd Myer Estate

Herman was retained to represent the executor of the estate of Floyd Myer, who died December 4, 1985. The respondent was given Myer's will within a few day of his death. Myer's will was admitted to probate on June 27, 1986. On September 28, 1987, a hearing was held to determine the claims against the estate. Herman failed to promptly journalize the hearing.

On March 22, 1988, a petition for final settlement was filed by Herman. In that document, he represented that the Kansas inheritance tax form had been submitted and that no tax was due on the estate. A hearing was set for final settlement of the estate, but it was continued as a result of Herman representing to the court that he had not received the necessary tax documents from

the State. The Kansas inheritance tax form was not filed by Herman until November 1, 1988. On the same day, Herman filed a journal entry of final settlement which stated that the inheritance tax had not yet been determined. The executor of the Myer estate died on March 26, 1989. The failure of Herman to act in a timely fashion made it necessary to have an administratrix de bonis non appointed. Another heir, Myer's wife, also died during the time this estate was open. As of the date the formal complaint was filed, no closing letter had been received by the court.

### Case No. B5116—The Marion Kuhlman Estate

Marion B. Kuhlman died November 30, 1988. He had used Herman as his attorney prior to his death. Kuhlman's will had been drafted by another attorney. Herman represented the executors of the estate. He was responsible for preparing and filing the estate's federal estate tax return. The decedent's will created two trusts, a marital and nonmarital trust. The will directed the executors to make an election allowed by the Internal Revenue Code for the purpose of qualifying the marital trust for the federal estate tax marital deduction. The respondent failed to make the election.

Herman's services were terminated when it was learned by the executors that the election had not been made. Another attorney was retained. Due to the efforts of new counsel, the Internal Revenue Service has allowed the estate to make the election. Herman's actions resulted in additional attorney fees and unnecessary costs to the estate.

### Case No. B5118—The Federal Land Bank

Herman was retained by the Federal Land Bank (FLB) to pursue mortgage foreclosures. In each of four instances, he failed to file a foreclosure action in a timely manner, if at all. The FLB discovered Herman's inaction and had the foreclosure cases taken over by another attorney. Herman failed to provide information requested by the FLB's new counsel upon termination of his services.

Additionally, Herman sent billings to the FLB which contained charges for work allegedly done regarding three of the foreclosures. He also sent status reports to the FLB indicating that a case had been filed and that litigation was occurring. Herman

misrepresented the status of the litigation and billed the FLB for work which was not performed.

On February 27, 1989, Herman entered into a settlement agreement with the FLB. He agreed to pay the FLB $90,000 to settle any claims which arose due to his failure to institute the FLB foreclosure proceedings.

### Case No. B5119—The Celestine Wellbrock Estate

Celestine Wellbrock died on April 28, 1984. She was survived by her husband, Herman Wellbrock, and six children. Herman and Celestine had executed joint, mutual, and contractual wills on February 25, 1975. Herman Wellbrock died on July 26, 1986.

Respondent was retained to probate the estate of Celestine Wellbrock. The will was probated and a partial distribution of assets occurred in February 1987. On November 25, 1987, a petition for final settlement was filed and set for hearing on December 23, 1987. No hearing took place on that date because the estate's inventory and inheritance tax return had not been filed.

On June 2, 1988, an heir of the estate, Donald Wellbrock, filed a petition to compel estate inventory, inheritance tax reporting, final settlement, and other relief. A hearing on the petition was held, and the executor was ordered to file an inventory and a copy of the Kansas inheritance tax return by July 28, 1988. An inventory was filed on September 12, 1988, and a certificate of nontaxability was filed on October 24, 1988.

As of the time of the filing of the Disciplinary Administrator's formal complaint, no further action had been taken by respondent to close out Celestine's estate and the remaining assets had not been distributed. An estate proceeding was never opened for Herman Wellbrock. Herman told the disciplinary complaint investigator that he had believed he could combine Herman Wellbrock's estate with the one already opened for Celestine. The petition for final settlement filed November 25, 1987, did add Herman Wellbrock's name to Celestine's case and requested that the court distribute the couple's property.

On August 31, 1989, a petition for partial distribution and other relief was filed on behalf of Donald Wellbrock. A hearing was held and the court made a partial distribution of the assets from

the estates. The court determined that an inventory of Herman's assets had not been filed and that no proof had been presented concerning satisfaction of Kansas inheritance taxes. At the hearing, Donald's counsel provided an inventory of Herman Wellbrock's assets as well as a nearly completed Kansas inheritance tax form (it lacked some personal data about the decedent). The court awarded Donald's counsel attorney fees for his work in the case, which were paid out of estate funds. The court found that Donald was responsible for the only activity in the probate file since December 23, 1987, and that the delay was without reasonable excuse.

As of the time of the disciplinary complaint, the respondent had failed to take action to close out either estate and had failed to cooperate with Donald's counsel, who was attempting to close out the estates.

### The Disciplinary Panel's Final Report

The following pertinent findings and recommendations were made by the panel:

#### "FINDINGS OF FACT

". . . In reaching its decision, the panel has considered the following findings of fact in mitigation:

"1. Respondent is an attorney at law. . . . Upon graduation he . . . established his own practice in Hays, Kansas, in April of 1978. He served as an Assistant County Attorney of Ellis County from 1979 until 1981 which was a part-time position. In 1981, he was elected to the position of Ellis County Attorney, which he held until 1983. At that time he returned to private practice. He served as an appointed Workers Compensation Judge from 1984 to 1992. He was in law partnership with Edward Bouker, now district court judge, from 1985-1990.

. . . .

"3. Respondent described a work pattern which intensified during his law partnership with Ed Bouker in which he increasingly had difficulty structuring his time, staying organized and following through with his work assignments. By 1990, he found it difficult to work effectively because he was unable to maintain the concentration and energy to get his work done. He increased his alcohol consumption as a form of self-medication. After the dissolution of his partnership with Mr. Bouker, his depression, alcohol consumption and inability to function effectively substantially increased.

"4. In March of 1992, Ed Bouker and Robert Diehl, a practicing attorney in Hays, confronted Respondent about their concern over his depression and his level of functioning at the office. Respondent, in turn, consulted with Dr. James Ryabick, a psychiatrist, and hospitalized himself in March

at Charter Hospital in Kansas City. He remained hospitalized for treatment for his depression for two weeks under the care of Drs. Budwell and Keim, both psychiatrists, and Dr. Ryabick, the clinical director. He was diagnosed with bipolar mood disorder and depression.

. . . .

"6. At the time of his hearing, Respondent had been faithful to his therapy program and was continuing to participate in therapy twice a week. He was taking prescription medication consisting of a dosage of Lithium (four capsules of 300 milligrams daily) and Zoloft of 100 milligrams a day. He had not consumed alcohol since his hospitalization at Charter Hospital. He planned to continue with therapy and medication on an indefinite basis.

. . . . .

"8. Dr. Gatschet, Respondent's psychiatrist, testified Respondent had a genetic predisposition in his family for mood disorders. He found no evidence of psychotic behavior in Respondent's history. He testified if Respondent's illness is properly medicated, in his opinion, Respondent can function effectively as a practicing attorney.

"9. The testimony from all of Respondent's health care practitioners corroborates Respondent's testimony that he has faithfully attended his counseling sessions and taken his medication. Respondent recognizes he must continue with counseling on an indefinite basis.

"10. The Honorable Ed Bouker and The Honorable Tom Scott testified by video tape deposition. Both judges attested to Respondent's good character and legal abilities . . . .

"11. William Jeter, a practicing attorney with the law firm of Jeter & Moran in Hays, Kansas, has agreed to monitor Respondent's law practice and has reviewed the status of Respondent's cases with him. He advised the panel that Respondent's files are in order and that he is willing to file written status reports on Respondent on a quarterly basis with the Disciplinary Administrator's office, as well as immediately report any deviation from proper practice should it occur.

"12. Respondent presented correspondence from practicing attorneys in the Hays area who attested to his ability. He also presented letters from James Dibble, Senior Vice President of Federal Land Bank Association of Hays, and Randall C. Clinksales which were complimentary of the manner in which Respondent acknowledged his mishandling of Case No. B5118 and promptly reimbursed the Federal Land Bank Association of Kansas in the amount of $90,000 to their satisfaction.

"13. Respondent advised the panel and the correspondence admitted from opposing counsel confirms that Respondent has made full restitution for his violations. . . . He had no malpractice insurance. No other monetary loss was suffered from the delay on any other cases.

"14. Respondent is a member of the Kansas Bar Association, the Kansas Association of Criminal Defense Counsel Lawyers and the Ellis County Bar Association. He is a past President and Secretary/Treasurer of the Ellis County Bar. He is a past member of the Board of Directors of the Hays

Humane Shelter. He is a co-founder of and long term member of the Northwest Kansas Family Shelter, a not-for-profit organization to help battered and other individuals in need of counseling. He is a past board member and a volunteer of Helpline, a 24-hour emergency telephone service in Hays and is active in his church, St. Joseph, Hays, Kansas.

"15. Respondent advised the panel he felt shame and remorse for his actions. All of the undisputed evidence submitted to the panel suggests Respondent has cooperated fully with the disciplinary authorities concerning the complaints and the proceedings. Respondent apologized to the panel for his actions and presented medical evidence to explain his actions. Respondent appears to have made peace with his clients as they request no discipline and report complete satisfaction with the manner in which he has acknowledged his mishandling and made restitution.

"16. Respondent recognizes his medical condition is permanent and he will require treatment indefinitely. He demonstrates willingness to continue his treatment and seems to understand he has an illness that will not go away.

"17. The panel is advised Respondent had former discipline imposed against him [in] In the Matter of John C. Herman, Case Nos. W3536 and W3633, resulting in informal admonition. The discipline was administered on July 25, 1986, and the panel found a violation of DR6-101(A)(3) [1993 Kan. Ct. R. Annot 227] [neglect] in that Respondent did not act diligently in handling motions concerning child visitation for his client.

. . . .

### "CONCLUSIONS OF LAW

"Respondent's actions with respect to the handling of legal matters in Case No. B4956 do amount to a violation of DR 1-102(A)(4), (5), and (6) [1993 Kan. Ct. R. Annot. 202] [misconduct]; DR 6-101(A)(3), DR 7-101(A)(2) and (3) [1993 Kan. Ct. R. Annot. 232] [zealous representation], MRPC 1.3 [1993 Kan. Ct. R. Annot. 263] [diligence]; MRPC 8.4 (c), (d), and (g) [1993 Kan. Ct. R. Annot. 347] [misconduct] and MRPC 1.4 [1993 Kan. Ct. R. Annot. 267] [communication]. Respondent's actions with respect to the handling of legal matters in Case No. B5118 do amount to a violation of MRPC 1.3, 3.2 [1993 Kan. Ct. R. Annot. 313] [failure to expedite litigation] and Canon 6 [1993 Kan. Ct. R. Annot. 227] [competence] in Count I; MRPC 1.3, 3.2 and 8.4 and Canons 1 [1993 Kan. Ct. R. Annot. 202] [integrity and competence], 6, 7 and 9 [1993 Kan. Ct. R. Annot. 245] [avoid appearance of impropriety] in Count II; MRPC 1.3, 3.2 and 8.4 and Canons 1, 6, 7 and 9 in Count III; and MRPC 1.3, 3.2 and 8.4 and Canons 1, 6, 7 and 9 in Count IV. Respondent's actions with respect to the handling of legal matters in Case Nos. B5116 and B5119 do amount to a violation of MRPC 1.1 [1993 Kan. Ct. R. Annot. 258] [competence] and 1.4 in Count I; and MRPC 1.1, 1.3, 1.4, 3.2 and 8.4 and Canons 1, 6 and 7 in Count II.

### "RECOMMENDATION

"Respondent is guilty of serious misconduct as he and his counsel both

recognize. Suspension from the practice of law is the customary discipline for such conduct. The panel was impressed, however, by the circumstances that led to Respondent's misfortunes and his willingness to recognize his problems and take the necessary steps to deal with them.

"Respondent clearly suffers from a medical disorder. The undisputed evidence was his mental disorder debilitated him and prevented him from acting in a responsible fashion. His illness affected his judgment and thought processes to the extent that it affected his actual work product. The panel is convinced he made no misrepresentations to his clients with the intent to deceive.

"Respondent and his family have suffered public humiliation and embarrassment. He did not act from any motive for personal financial gain and did not profit from his actions in any way.

"Of some concern to the panel at this time is Respondent's separation from his wife. At the time of the hearing, Respondent's wife was present and she had undertaken to assist Respondent in the office management of his law practice, as well as participate with him in his treatment. To Respondent's credit, based upon the representations of his attorney, Respondent appears to be handling the present situation well. The panel is mindful, however, of the fragile balance that holds Respondent's life together as he takes the necessary steps to recovery.

"The hearing panel concludes that this matter deserves special attention for the foregoing reasons:

"1. Acknowledgement of mental illness with prompt treatment and medication;

"2. Cooperation with all participants in the disciplinary process;

"3. Restitution to the aggrieved parties and assistance to their satisfaction;

"4. Confinement of misconduct to a definite time period ending in 1990 before diagnosis of illness and abated prior to the imposition of discipline and monitored by professional counseling of indefinite duration;

"5. Acceptance of continued professional practice by clients;

"6. Support of the rehabilitation effort by other members of the local bar;

"7. Support of the rehabilitation effort by the judiciary and agreed monitoring of Respondent's actions by a competent and respected fellow attorney William Jeter. The panel was particularly impressed with Mr. Jeter's integrity, candor and willingness to take the time to serve in a supervisory capacity for Respondent and monitor his activities;

"8. Unanimous conviction of the hearing panel and the Disciplinary Administrator that rehabilitation of Respondent will serve the best interests of the profession and that Respondent is sincere in his efforts and contrite. With proper medication and treatment, Respondent functions effectively in the practice of law.

"The panel recommends that the Court enter and publish an Order of Discipline of John Herman on the following terms:

"The Respondent be disciplined by suspension from the practice of law pursuant to Supreme Court Rule 203(a)(2) [1993 Kan. Ct. R. Annot. 162]

for a period of twelve (12) months, said discipline being probated on the following terms and conditions pursuant to Supreme Court Rule 203(a)(5): (The panel's initial inclination was to impose a twenty-four (24) month suspension. The panel recognizes Respondent has informally for the last ten (10) months engaged in a monitoring plan so its recommendation is for a lesser time period.)

"1. Attorney William Jeter will supervise Respondent's legal practice for a period of twelve (12) months from the Supreme Court Order authorizing this plan.

"2. William Jeter shall be acting as an officer of the Court and as agent for the Court as supervisor of probation in monitoring the legal practice of Respondent. Mr. Jeter shall be afforded all immunities granted by Supreme Court Rule 223 [1993 Kan. Ct. R. Annot. 199] during the course of his activities as directed by the Supreme Court's Order.

"3. Respondent will allow Mr. Jeter access to his files, his case inventory, his secretary, and his trust account. He shall periodically, but at least twice a month, check the following:

"a. The status of each case on Mr. Herman's case list;

"b. The efficacy of Mr. Herman's docketing system;

"c. Management of discovery;

"d. Responses to client requests for information;

"e. Mr. Herman's trust account; and

"f. The view of local judges as to their evaluation of Respondent's performance.

"4. The supervising attorney shall by separate writing acknowledge that he has read this proposed plan and that he agrees to serve in the capacity of supervising attorney as outlined herein and, further, that he has already reviewed the case inventory of the Respondent, familiarized himself in a general way with the client files and general type of practice of the Respondent, and states that there appears to be no apparent, significant problems with the case inventory of Respondent. On a quarterly basis, Mr. Jeter will report to the Disciplinary Administrator regarding the Respondent's progress he observes. Mr. Jeter will immediately report any material deviation from proper practice he observes.

"5. The Respondent shall continue to attend the counseling sessions with Ms. Judy Caprez, licensed clinical social worker, and Dr. Tim Gatschet, and shall prepare and/or sign all necessary releases to direct and authorize Ms. Caprez and Dr. Gatschet to report periodically, but at least every two months, to the office of the Disciplinary Administrator on his progress in counseling. The report should note any significant deviation from the agreed appointments.

"6. Respondent shall obtain, prior to the implementation of this program, an updated report from Ms. Caprez and Dr. Gatschet which shall include at least the following:

"a. Their diagnosis of the psychological problems or condition of Respondent;

b. Any progress made by Respondent since his hearing on November 12, 1992; and

"c. Their prognosis for the future so far as the same may be made as it relates to Respondent and the recommended course of treatment.

"7. Ms. Judy Caprez and Dr. Tim Gatschet shall be acting as officers of the Court in reporting to the Disciplinary Administrator as required in Paragraph 5 and 6 herein, and shall be afforded all immunities granted by Supreme Court Rule 223 during the course of their activities covered by this plan or as directed by the Supreme Court.

. . . .

"9. Respondent shall continue with good faith efforts to obtain legal malpractice liability insurance throughout the course of this probationary period. Respondent shall advise the office of the Disciplinary Administrator in writing of his efforts to obtain such insurance prior to the implementation of this program and shall provide the office of the Disciplinary Administrator with letter reports of his efforts at least every six (6) months during the course of his probationary period.

"10. At the end of [the term of discipline], the Disciplinary Administrator shall certify to the Supreme Court the Respondent's satisfactory completion of probation.

"11. Upon report of any misconduct or noncompliance with these Orders by the Respondent, the Disciplinary Administrator shall *promptly* inform the Supreme Court and an Order shall be issued directing Respondent show cause why these Orders should not be vacated and such discipline be imposed by the Court as it deems just and proper without further formal proceedings."

Herman filed a brief answer and statement of exceptions to the panel's report. Herman agrees with the findings and conclusions stated in the report, except for certain "minor errors" pertaining to names, locations, and the diagnosis of illness.

Herman also states that he agrees with the recommended discipline and the accompanying narrative, except where the panel stated that it was mindful of the "fragile balance" that holds his life together during his recovery.

### Standard of Review

"In *State v. Klassen,* 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' In *State v. Ziegler,* 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or

where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' See *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987)." *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993).

We find there is clear and convincing evidence establishing the violations found and enumerated by the panel as to each of the counts. We have reviewed updated reports prepared by Judy Caprez and Dr. Timothy Gatschet. These reports indicate that the respondent has continued to progress through treatment and therapy. William Jeter has, in writing, acknowledged the proposed plan and has agreed to serve as Herman's supervising attorney. We agree with and adopt a modified version of the panel's findings, conclusions, and recommendations. We have intentionally omitted paragraph 8 from the final hearing report. This paragraph stated that two Kansas district court judges should monitor William Jeter's supervision of Herman, as well as Herman's probation. We decline to follow this recommendation. We encourage all Kansas judges to visit with attorneys who seek or are deemed to be in need of guidance and support because personal problems have affected professional performance. The judicial chamber's door should remain open. However, active Kansas judges should not be named as official supervisors of an attorney under an order of discipline issuing from this court.

Additionally, we impose the following requirements:

(1) Herman shall be disciplined by suspension from the practice of law under Supreme Court Rule 203(a)(2) (1993 Kan. Ct. R. Annot. 162) for a period of 24 months from the date of this opinion, with the discipline probated under Supreme Court Rule 203(a)(5) on the terms and conditions set out in the final hearing report as modified by this opinion.

(2) Either William Jeter or another attorney approved by this court shall continue to supervise Herman until such time as Herman secures legal malpractice insurance coverage in an amount to be approved by this court. Herman shall remain on probation during his supervision.

(3) Alternative medical and/or social work professionals may be substituted for Dr. Timothy Gatschet or Judy Caprez upon approval of the Disciplinary Administrator.

IT IS THEREFORE ORDERED that John C. Herman be suspended from the practice of law for a minimum period of 24 months in accordance with Supreme Court Rule 203(a)(2), the discipline being probated in accordance with Supreme Court Rule 203(a)(5) on the terms and conditions recommended by the panel, as modified by this court.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to the respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.