No. 64,564

In the Matter of WAYNE R. ANDERSON, *Respondent.*

(795 P.2d 64)

Opinion filed July 13, 1990.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Wayne R. Anderson,* pro se, argued the cause and was on the brief for the respondent.

*Per Curiam:* This original proceeding in discipline was filed by the office of the disciplinary administrator against Wayne R. Anderson, of Goodland, an attorney admitted to the practice of law in the State of Kansas. The formal complaint filed against respondent alleges violations of Model Rules of Professional Conduct 3.3 (1989 Kan. Ct. R. Annot. 238); 8.1 (1989 Kan. Ct. R. Annot. 266); 8.2 (1989 Kan. Ct. R. Annot. 267); and 8.4 (1989 Kan. Ct. R. Annot. 268). Respondent did not file an answer.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on July 12, 1989, in the Harold R. Fatzer hearing room at the Kansas Judicial Center, Topeka, Kansas. Respondent appeared pro se. The panel found that, apart from the accuracy of respondent's public statements, there is no material dispute as to the facts. The panel noted, however, that respondent "fervently disagrees" as to the motives and purpose for his conduct or that his conduct was a violation of the Model Rules of Professional Conduct.

The panel noted that the complaint against respondent involved his refusal to obey child custody and support orders of the district court in Colorado (Case No. 78-DR-0576); the truthfulness and adequacy of disclosures made relative to respondent's admission to practice law in Kansas; respondent's actions relative to the Uniform Reciprocal Enforcement of Support Act (URESA) proceedings; his statements to the press following his resignation as county counselor; and his incarceration for failing to comply with the child support order in the URESA proceedings filed in Sher-

man County District Court. The panel then made the following findings:

"3. The evidence is not clear or convincing that Respondent made false or misleading statements to the Kansas Board for Admission of Attorneys in 1985 (Exhibits 4 through 7). Respondent's disclosure of his prior conduct did not prevent a fair or impartial assessment of his fitness to practice law. Although later events may well have [led] the Board to reach a different conclusion, the panel finds that the evidence fails to support the charge in Paragraph 8 of the Formal Complaint or a violation of MRPC 8.1.

"4. The public statements attributed to Respondent in Exhibits 10 through 20 are disputed and capable of various interpretations. Whether Mr. Anderson's pronouncements were portrayed accurately or inaccurately, the panel finds that the statements are insufficient in themselves to support a charge of conduct prejudicial to the administration of justice under MRPC 8.4(d). This finding is not intended to preclude consideration of Respondent's conduct, as distinguished from his public remarks. On the contrary, the statements attributed to Respondent sustain and reinforce the conduct portrayed throughout the record of this proceeding.

"5. The panel finds that Mr. Anderson's pattern of behavior is clear and convincing evidence of his contempt for judicial process and indifference to legal obligation. We do not question the sincerity of Respondent's beliefs or his right to advocate his opinions within the confines of MRPC 3.1. We do find that Respondent has engaged in a pattern of conduct best summarized by Judge Delaney in Exhibit 1, Page 6:

" 'Mr. Anderson has repeatedly emphasized his constitutional right to due process of law. He has consistently avoided any reference to his obligations under those same laws, nor has he at any time met such obligations. He has stressed his parental rights but he has ignored the parental rights of Willow Cramlet, and, by his conduct violated her parental rights by removing the child from her custody and depriving her of any contact whatsoever for nearly four years. He has violated the child's rights to a secure home and access to both parents by his abduction and concealment of the child for a period in excess of half the child's life, and he denied the child legal due process in not allowing the child his day in Court, to be represented by a [guardian] ad litem, and to have there determined, legally, what was in the child's best interest.'

Mr. Anderson remains steadfast in his opinions and in his freedom to act thereon with impunity under the MRPC and Rules of the Supreme Court.

"Exhibits 24, 24-A, 25 and 25-A demonstrate continued defiance of lawful court orders entered by the District Court of Sherman County, Kansas. During the October 27, 1988, hearing before Judge Worden on an accusation in contempt lodged by the Kansas Department of Social and Rehabilitation Services in the URESA proceeding, Mr. Anderson testified:

" 'Q. (continuing) You were previously in the employ of Sherman County, Kansas, is that correct?

" 'A. That's right.

" 'Q. And you on your own initiative resigned that job, is that correct?
" 'A. That's true.
" 'Q. Could you state your reasons why you resigned?
" 'A. Well, I was garnished in that job and it was going to be an embarrassment for the county so I just resigned.
" 'Q. Garnished by whom?
" 'A. By you I would assume.
" 'Q. In other words, a garnishment through whatever authorities and assignments your ex-wife, Willow Cramlet?
" 'A. That's right, that's right.
" 'Q. An that is the reason you resigned from the county, is that correct?
" 'A. That's the only reason, that's right.
" 'Q. Were any monies actually taken from your checks at that time?
" 'A. No, I don't believe so.
" 'Q. So, in other words, at least at that time you were earning an income and quit that job to avoid paying Willow Cramlet, correct?
" 'A. That's about the size of it. (Exhibit 24, Pages 17-18).

Having resigned his only gainful employment of recent years for the stated purpose of avoiding child support obligations, Respondent was incarcerated for contempt of court. No appeal was taken from Judge Worden's decisions under which that court affirmed the final judgment of the Colorado District Court against Mr. Anderson in the sum of $61,858.03 (Exhibit 21) and ordered Respondent to commence payments of $216.00 per month (Exhibit 22).

"6. On November 24, 1988, Mr. Anderson sought release from jail by writing to Judge Worden:
" 'I agree to pay the support ordered by the court and further agree to seek employment to pay said support (Exhibit 25).'

That written representation to the Court followed earlier correspondence between Judge Worden and Mr. Anderson in which the Court requested definite plans and assurances of compliance with Mr. Anderson's child support obligations (Exhibit 25-A). Mr. Anderson has made no voluntary payment of child support from the inception of the Colorado court proceedings in 1978 through the present. At the time of the hearing before this panel, no evidence or testimony was offered by Mr. Anderson to suggest a different course of action."

## The panel then recommended suspension, stating:

"There is no uncertainty in distinguishing Mr. Anderson's unpopular views and his knowing violation of court orders. The Commentary to Section 6.22, *ABA Standards for Imposing Lawyer Sanctions*, resolves the pending matter:
" 'In many cases, lawyers are suspended when they knowingly violate court orders. Such knowing violations can occur when a lawyer fails to comply with a court order that applies directly to him or her, as in the case of lawyers who do not comply with a divorce decree ordering spousal maintenance or child support.'

Consistent with the American Bar Association's standard, this panel recommends the imposition of suspension under Standard 6.22:

" 'Suspension is appropriate when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.' "

The respondent filed exceptions to the report of the hearing panel. He takes exception to several factual findings which are not relevant or material. He primarily contends that he did not violate any court order nor was he ever found guilty of violating any order for support or custody. He denies that he ever refused to obey any *valid* court order. He specifically denies that he has shown indifference to the legal obligations or defiance to any lawful order. He further denies that Judge Delaney's findings are anything more than dicta and nebulous charges.

Respondent contends that he was unjustifiably found in contempt of court by Judge Worden and that there was no evidence presented to find he was in contempt of court. However, he did not appeal Judge Worden's finding of contempt. He further contends that the agreement he signed to purge himself of contempt and gain his release from jail was invalid and unenforceable because it was an adhesion contract. Even if the agreement was valid, respondent contends he only agreed to pay support ordered by the court and to seek employment to pay the support. He further contends that, since there has been no subsequent order by the court to pay support or a specific time in which to pay it, he did not breach the agreement. It would serve no useful purpose to reiterate the nonsensical arguments by the respondent. His oral argument before this court was a rehashing and a reargument of his divorce action in Colorado and the URESA proceeding in Sherman County.

Respondent admitted that he has not made one single voluntary payment of child support since he was divorced in 1978. He testified before Judge Worden that he quit his position as county counselor to avoid paying child support as ordered by the Colorado district court. He continues to argue that the orders of the Colorado district court and Judge Worden were not valid. That argument should have been made on appeal of those orders and not in this proceeding. There was ample evidence to support the panel's findings that respondent's conduct and behavior evidenced

a contempt for judicial process and an indifference to his legal obligations.

The respondent also contends that MRPC 8.4(d) is a "vague and loose standard." We do not agree. Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." In *State v. Nelson*, 210 Kan. 637, 504 P.2d 211 (1972), Mr. Nelson made the same contention as to the identical language in DR 1-102(A)(5) (1989 Kan. Ct. R. Annot. 147). This court said: "It cannot be seriously contended that 'prejudicial' does not sufficiently define the degree of conduct which is expected of an attorney." 210 Kan. at 640. As to such rule having a chilling effect on the First Amendment, this court said:

"[A]n attorney's right to free speech is tempered by his obligation to both the courts and the bar, an obligation to which ordinary citizens are not held. In the case of *In re Sawyer*, 360 U.S. 622, 3 L. Ed. 2d 1473, 79 S. Ct. 1376, the last case in which the United States Supreme Court addressed itself to the subject, it appears that at least five justices agreed that the right to free speech may not be invoked to protect an attorney against discipline for unethical conduct." 210 Kan. at 640.

Finally, respondent takes issue with the panel's reliance upon § 6.22 of the ABA Standards for Imposing Lawyer Sanctions. Section 6.22 provides: "Suspension is appropriate when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." The panel found that the language found in the commentary following § 6.22 resolved the issue concerning whether the respondent should be disciplined for his actions in willfully violating court orders.

The ABA Standards for Imposing Lawyer Sanctions are designed to promote uniform discipline for attorneys. Respondent, in his brief, asserts that the Standards have "no weight in the law." However, in *In re Price*, 241 Kan. 836, 739 P.2d 938 (1987), this court specifically relied on the Standards in its decision to disbar Mr. Price. We cited the Standards in supporting the proposition that a lawyer should receive more severe discipline for repeated neglect of clients' cases than he would for a single, isolated instance of neglect.

We cannot help but note respondent's failure to cite any legal authority in support of his arguments in his exceptions, brief, or oral argument to this court.

This court, having considered the record herein, concurs in the findings and recommendation of the panel that the respondent should be suspended.

IT IS THEREFORE ORDERED that Wayne R. Anderson be and he is hereby indefinitely suspended from the practice of law in Kansas.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1989 Kan. Ct. R. Annot. 138), that he shall pay the costs of this proceeding, and that this order be published in the official Kansas Reports.