In re Petition for DISCIPLINARY ACTION AGAINST Francis E. GIBERSON, an Attorney at Law of the State of Minnesota.

No. C9–96–2392.

Supreme Court of Minnesota.

July 30, 1998.

Edward J. Cleary, Director, Craig D. Klausing, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for Director.

Francis E. Giberson, pro se, LaCanada, CA.

## OPINION

PER CURIAM.

Respondent Francis Giberson was admitted to the practice of law in Minnesota on October 1, 1976. He held the post of deputy commissioner at a state agency from January 1983 through February 1987, and was then associated with a Minnesota law firm until 1990. In August 1990 respondent moved from Minnesota to New York, although he retained an "of counsel" relationship with another Minnesota law firm until 1992.

Respondent's prior disciplinary history includes: (1) being placed on CLE restricted status in 1990 and 1993; (2) suspension for failure to pay the annual attorney registration fee on April 1, 1992 and 1994; and (3) a private stipulation for probation in July 1992 for unauthorized practice of law while on CLE restricted status between January 19, 1990 and August 20, 1990, and for continuing to hold himself out as authorized to practice law while suspended for nonpayment of the annual attorney registration fee from April 1, 1992 to May 18, 1992. Respondent completed the private probation in 1994.

In 1991, respondent entered into a marital termination agreement that provided, *inter alia*, for monthly payments of $4,000 for child support and spousal maintenance. This agreement was incorporated into the judgment and decree. Respondent made partial payments for several months. On motion of respondent's ex-wife, the Hennepin County family court found respondent to be in arrears on child support and spousal maintenance payments in the amount of $8,030 for the period of October 1991 through February 14, 1992 and in the amount of $3,500 awarded to his ex-wife for attorney fees in the judgment and decree. After his ex-wife filed a motion for civil contempt for failure to make payments ordered by the court, the respondent made a partial payment to avoid a finding of contempt. He then made no further payments, and moved to New York. Respondent's ex-wife filed a Uniform Reciprocal Enforcement of Support Act (URESA) proceeding seeking an order for child support, medical coverage and collection of arrears, which was filed with the New York Interstate Central Registry.

In September of 1994, the Hennepin County Support and Collection agency filed an ethics complaint against respondent pursuant to Minn.Stat. § 518.551, subd. 12(b) (1996), which authorizes a public agency to report to the Lawyers Professional Responsibility Board a lawyer's failure to pay child support or spousal maintenance.

After a hearing before a referee in August 1995, the family court of Suffolk County, New York, issued findings of fact finding that respondent had violated the support order. The referee found that respondent was in willful noncompliance with the order of support, and that respondent's claim that he lacked the ability to pay support was not supported by the evidence. The referee directed a money judgment for the arrears for

$47,000 (plus $2,941 costs and attorney fees) exclusive of a previous judgment for $82,090. The referee recommended incarceration for a minimum of ten days and referred the matter to a family court judge for a dispositional hearing. Respondent was permitted to purge the dispositional hearing and recommendation of incarceration by payment of $8,000.

In March 1996 a referee for Suffolk County family court issued another order finding that respondent had willfully failed to obey an order for support and entered a money judgment against him for $14,000 for arrears. As of March 31, 1996, respondent was in arrears for child support and spousal maintenance in excess of $170,340.[1] When respondent failed to appear for a May hearing, a warrant was issued for his arrest. An assistant county attorney for Suffolk County spoke with respondent by telephone, who indicated that he would not pay his support obligation and that he would avoid arrest by avoiding New York. The assistant county attorney for Suffolk County subsequently contacted an assistant U.S. attorney in Minneapolis to report that New York's long-arm statute would not reach respondent in California, where he was believed to be residing at the time.

On June 20, 1996, the Director of the Office of Lawyers Professional Responsibility ("director") issued charges of unprofessional conduct against respondent and mailed to him a notice of pre-hearing scheduled for July 10, 1996. On July 9, a California attorney contacted the director indicating that she had been retained to represent respondent in the matter and requesting a postponement of the hearing. The postponement was granted until July 25, 1996. On July 22, respondent's attorney sent a facsimile transmission to the director indicating that she was withdrawing from representing respondent. On July 25 (the date of the scheduled hearing) respondent sent a facsimile transmission to the director indicating that his failure to appear or respond was due to lack of funds, and not the result of "indifference to the outcome or any lack of respect" for the director's office.

The letter indicated that respondent did not live at the address to which the notice was mailed; however, he provided no other address or telephone number.

After respondent failed to appear at the pre-hearing, the director received approval from the Lawyers Board Panel Chair to file a petition for disciplinary action with the Supreme Court. Respondent could not be found or served personally, so the director filed an application for an order suspending respondent from the practice of law pursuant to rule 12(c)(1) of the Rules on Lawyers Professional Responsibility (RLPR). By order dated January 14, 1997, we suspended respondent from the practice of law. The order allowed respondent one year from the date of the order to move the court to vacate the order or for leave to answer the disciplinary petition. Respondent has not filed any motion or response with this court.

On March 20, 1998, this court issued an order to show cause directing the parties to submit written proposals on or before May 18, 1998, and directing respondent to appear before the court on June 4, 1998. Because respondent could not be found, the order to show cause was served by publication in Minnesota and Los Angeles, pursuant to Rule 12(c)(2), RLPR. *See In re Pottenger,* 567 N.W.2d 713, 716 (Minn.1997). Again, respondent did not respond in any manner and he did not appear at the hearing before this court.

The director made extensive efforts to locate and to notify respondent of these disciplinary proceedings, including attempted personal service, publication, and notice addressed to his last-known address. Accordingly, it is proper to deem the allegations contained in the director's petition to be admitted, and proceed accordingly. *See Pottenger,* 567 N.W.2d at 716; *see also* Rule 13(b), RLPR.

The purpose of attorney discipline is not to punish the attorney but rather "to guard the administration of justice and to protect the courts, the legal profession and the public." *In re Serstock,* 316 N.W.2d 559,

---

1. This amount does not include any interest charges accrued on the past due amounts, or any amounts which have continued to accrue since March 31, 1996.

561 (Minn.1982) (citation omitted). "In determining the appropriate sanction to impose, the court considers the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and to the profession." *In re Anderley*, 481 N.W.2d 366, 369 (Minn.1992).

This court has not previously been confronted with an attorney discipline case based primarily on an attorney's failure to comply with a court order to pay child support and spousal maintenance. Rule 30, RLPR,[2] adopted by this court in June 1996, authorizes the director to petition the supreme court for administrative suspension of an attorney upon receipt of a report from a public authority pursuant to Minn.Stat. § 518.551, subd. 12 [3] that the attorney is in arrears in payment of child support or spousal maintenance. An attorney suspended under this rule may be reinstated by filing an affidavit with supporting documentation averring either that he is no longer in arrears or that he has entered into and is in compliance with an approved payment agreement. Rule 30(c), RLPR. The rule also expressly permits disciplinary proceedings against the attorney "if the attorney's conduct also violates the Minnesota Rules of Professional Conduct." Rule 30(d), RLPR.

■ Minn. R. Prof. Conduct 3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." Further, Minn. R. Prof. Conduct 8.4(d) states: "It is professional misconduct for a lawyer to: * * * (d) engage in conduct that is prejudicial to the administration of justice." In the case before us, we conclude that respondent's willful failure to obey court orders was prejudicial to the administration of justice and caused substantial injury to respondent's ex-wife and children.

Although respondent's failure to pay child support and spousal maintenance forms the primary basis for the director's petition, the director additionally alleged noncooperation by respondent and failure to comply with the notification requirements of rule 26 of the RLPR. An attorney owes a duty to cooperate with the investigations of the director. Minn. R. Prof. Conduct 8.1(a)(3); Rule 25, RLPR. An attorney's "complete lack of cooperation with the disciplinary system" was the primary basis of a six-month suspension in the case of *In re Grzybek*, 552 N.W.2d 215, 217 (Minn.1996). The court observed in Grzybek that "failure to cooperate with disciplinary authorities is itself grounds for discipline." *Id.* (citing *In re Olson*, 545 N.W.2d 35, 38 (Minn.1996)).

The Kansas Supreme Court was confronted with circumstances similar to this case in *In re Anderson*, 247 Kan. 208, 795 P.2d 64 (1990), when it concluded that an attorney's willful failure to comply with a child support order and resignation from employment to

---

**2.** Rule 30 of the Rules of Lawyers Professional Responsibility states in part:

(a) Upon receipt of a district court order or a report from an Administrative Law Judge or public authority pursuant to Minn.Stat. § 518.551(12) finding that a licensed Minnesota attorney is in arrears in payment of maintenance or child support and has not entered into or is not in compliance with an approved payment agreement for such support, the Director's Office shall serve and file with the Supreme Court a motion requesting the administrative suspension of the attorney until such time as the attorney has paid the arrearages or entered into or is in compliance with an approved payment plan. The Court shall suspend the lawyer or take such action as it deems appropriate.

\* \* \* \* \* \*

(c) An attorney administratively suspended under this rule may be reinstated by filing an affidavit with supporting documentation averring that he or she is no longer in arrears in payment of maintenance or child support or

that he or she has entered into and is in compliance with an approved payment agreement for payment of such support. Within 15 days of the filing of such an affidavit the Director's Office shall verify the accuracy of the attorney's affidavit and file a proposed order for reinstatement of the attorney requesting an expedited disposition.

**3.** Minnesota Statute § 518.551, subd. 12(b) authorizes a public authority responsible for child support enforcement to report an arrearage to the lawyers professional responsibility board when the obligor is attorney licensed in the state of Minnesota and the obligor is in arrears in court-ordered child support or maintenance payments or both in an amount equal to or greater than three times the total monthly support and maintenance obligation and is not in compliance with a court-approved written payment agreement regarding both current support and arrearages.

avoid paying child support warranted indefinite suspension. *Id.*, 795 P.2d at 68. The Kansas court relied in part on the ABA Standards for Imposing Lawyer Sanctions, which provides that "[s]uspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." Standards for Imposing Lawyer Sanctions § 6.22 (1991) (amended 1992).

We further note that the commentary to section 6.22 expressly contemplates a case such as this one, in which the court order violated is directed to the lawyer as a party to litigation rather than as a client advocate: "In many cases, lawyers are suspended when they knowingly violate court orders. Such knowing violations can occur when a lawyer fails to comply with a court order that applies directly to him or her, as in the case of lawyers who do not comply with a divorce decree ordering spousal maintenance or child support." Id., § 6.22 commentary at 42. While we are not prepared to say that every failure to pay a civil judgment is professional misconduct, we conclude in this case that respondent's conduct is especially egregious and his willful refusal to comply with court-ordered child support and spousal maintenance payments pursuant to his stipulated marital termination agreement, resulting in arrearages in excess of $170,000, is professional misconduct warranting indefinite suspension.

Accordingly, respondent is hereby suspended indefinitely from the practice of law. Prior to reinstatement, respondent shall (1) comply with the requirements of Rule 18, RLPR and (2) demonstrate either that he is no longer in arrears in payment of child support and spousal maintenance or that he has entered into and is in compliance with an approved payment agreement.

The director is awarded costs and disbursements in the amount of $900, pursuant to Rule 24(a), RLPR.

Mr. Giberson is ordered suspended.