STATE OF MINNESOTA

IN SUPREME COURT

A23-1218

Original Jurisdiction

In re Petition for Disciplinary Action against
Madsen Marcellus, Jr., a Minnesota Attorney,
Registration No. 0344643.

Per Curiam
Took no part, Hennesy, Gaïtas JJ.

Filed: November 20, 2024
Office of Appellate Courts

_____

Susan M. Humiston, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Barry A. O'Neil, Nathan Z. Heffernan, Lommen Abdo, P.A., Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      An attorney who is licensed to practice law and is practicing law in Minnesota at the time the Director of the Office of Lawyer's Professional Responsibility learns that the attorney has been publicly disciplined or is subject to public disciplinary charges in another jurisdiction is subject to reciprocal discipline under Rule 12(d), Rules on Lawyers Professional Responsibility.

1

2. Reciprocal discipline of disbarment under Rule 12(d), Rules on Lawyers Professional Responsibility, is appropriate where an attorney was disbarred in another jurisdiction for participating in a fraudulent mortgage application that also violated a court order in a dissolution proceeding, failing to inform a court of the fraudulent nature of that application, willfully violating numerous court orders in a marital dissolution proceeding, violating the terms of a final judgment in his marital dissolution proceedings, failing to pay court-ordered fees and taking steps to avoid legal process, and failing to pay court-ordered child support over a period of several years even after earlier discipline had been imposed for that conduct.

Disbarred.

## O P I N I O N

PER CURIAM.

In this case, we consider the request of the Director of the Office of Lawyers Professional Responsibility (the Director) to impose reciprocal discipline on attorney Madsen Marcellus, Jr., and disbar him from the practice of law under Rule 12(d) of the Rules on Lawyers Professional Responsibility (RLPR). The Director's request arises out of attorney discipline Marcellus received in the state of Florida.

In 2018, the Florida Supreme Court suspended Marcellus for 18 months. *Florida Bar v. Marcellus*, 249 So.3d 538, 547 (Fla. 2018) (*Marcellus I*). He was never reinstated. In 2022, the Florida Supreme Court disbarred Marcellus. *See Florida Bar v. Marcellus*, No. SC21-579, 2022 WL 4087827 (Fla. Sept. 7, 2022) (*Marcellus II*). Marcellus's misconduct in Florida included participating in a fraudulent mortgage application that also

2

violated a court order in a dissolution proceeding, failing to inform a court of the fraudulent nature of that application, willfully violating numerous court orders in his marital dissolution proceeding, violating the terms of a final judgment in his marital dissolution proceedings, failing to pay court-ordered fees and taking steps to avoid legal process, and failing to pay court-ordered child support over a period of several years even after earlier discipline had been imposed for that conduct. Marcellus never reported the Florida disciplinary proceedings to the Director.

In 2022, the Director learned about the Florida disciplinary proceedings. Under Rule 12(d), RLPR, the Director filed a petition for imposition of reciprocal discipline of disbarment on Marcellus. Because we find that disbarment is appropriate reciprocal discipline for his misconduct, we grant the Director's petition and disbar Marcellus.

## FACTS[1]

Attorney Madsen Marcellus, Jr., was admitted to the Florida Bar in 2003. In 2005, he was also admitted to practice law in Minnesota. His Minnesota license entered non-compliant status in 2009 because Marcellus did not comply with Continuing Legal Education (CLE) requirements and did not pay annual registration fees.

---

[1] Facts relating to Marcellus's conduct for which he was suspended and later disbarred in Florida are derived from referee reports submitted to the Florida Supreme Court in his disciplinary proceedings. "Unless the Court determines otherwise, a final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in Minnesota." Rule 12(d), RLPR. Marcellus does not provide any reason we should not accept the findings of the Florida courts that he committed certain misconduct.

In 2009, K.P. filed for divorce from Marcellus. A Florida district court entered a Final Order on Petition for Dissolution in 2010. Prior to the divorce, the couple owned a home. Both K.P. and Marcellus were named on the mortgage for the home. K.P. was awarded the home in the dissolution proceedings but could not afford the mortgage payments. The Florida court issued an order requiring Marcellus to either refinance or sell the home.

K.P. negotiated a sale, but when she vacated the home prior to closing, Marcellus moved himself and his belongings into the home and refused to leave or finalize the sale. Accordingly, under the court's order, Marcellus was required to refinance the home. In 2010, however, Marcellus pursued a loan modification rather than refinancing the home. Under the loan modification, K.P. remained responsible for the mortgage and, therefore, the loan modification required both Marcellus's and K.P.'s signatures. When K.P. refused to sign the loan modification, Marcellus allowed C.F., a notary and mutual friend of the couple, to notarize the loan modification application on K.P.'s behalf. Marcellus knew that K.P. did not approve the notarization. C.F. later lost his notary commission because of the fraudulent notarization. In addition to failing to either refinance the mortgage or sell the home as required by the court order, Marcellus submitted the loan modification agreement to a bank for approval despite knowing that it was fraudulently notarized.

K.P. did not learn about the loan modification agreement until the lender filed a foreclosure complaint and served it on her. In 2013, K.P. filed a motion for contempt based on Marcellus's failure to remove her name from the loan modification and the mortgage.

4

Marcellus was served with pleadings in the contempt proceeding in May 2013. In June 2013, he was served with discovery requests, notice of trial on the civil contempt relating to the loan modification, and other documents. Further discovery requests were served on Marcellus numerous times thereafter. Despite service to his verified home and office addresses and via email to a verified email address, K.P.'s counsel received no response from Marcellus. K.P.'s counsel attempted to subpoena him as a witness for an evidentiary hearing to no avail. Overall, between May and July 2013, Marcellus did not respond to any pleadings or discovery requests.

At a July 2013 hearing, the court ordered Marcellus to provide responses to outstanding discovery requests. Marcellus did not do so within the required timeframe, nor at any later time. For this Marcellus was sanctioned and ordered to pay K.P.'s attorney's fees within 30 days. He ignored that order as well.

Marcellus continued to disobey court orders and obstruct discovery, causing the court to grant motions to compel in September 2013, July 2014, and September 2014. After the third motion to compel discovery, the court ordered Marcellus to pay a daily $50 fine until he proved compliance. He never provided such proof. Marcellus did not appear at an order to show cause hearing in September 2014. The court issued a writ of bodily attachment, which would permit his arrest in order to bring him before the court. *See Sanders v. Laird*, 865 So.2d 649, 651–52 (Fla. Dist. Ct. App. 2004). Rather than comply, however, Marcellus exchanged vehicles with his then-wife and ceased attending his children's activities to avoid arrest.

In 2016, disciplinary proceedings were initiated against Marcellus in Florida. A referee was appointed. The referee found that Marcellus's conduct violated his ethical obligations as a Florida lawyer. The referee determined that Marcellus violated Rule 3-4.3, Rules Regulating the Florida Bar (RRFB) ("commission by a lawyer of any act that is unlawful or contrary to honesty and justice"); Rule 4-3.4(a), RRFB ("unlawfully obstruct[ing] another party's access to evidence"); Rule 4-3.4(b), RRFB ("fabricat[ing] evidence"); Rule 4-3.4(c), RRFB ("knowingly disobey[ing] an obligation under the rules of a tribunal [unless asserting] that no valid obligation exists"); Rule 4-3.4(d), RRFB ("mak[ing] a frivolous discovery request or intentionally fail[ing] to comply with a legally proper discovery request"); Rule 4-8.4(c), RRFB ("engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"); and Rule 4-8.4(d), RRFB ("engag[ing] in conduct in connection with the practice of law that is prejudicial to the administration of justice").[2] *See Marcellus I*, 249 So.3d at 542.

The referee recommended that Marcellus be suspended for 12 months, noting as aggravating factors dishonest or selfish motive, a pattern of misconduct, multiple offenses, submission of false statements or evidence or other deceptive practices during the disciplinary process, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. The referee also stated that Marcellus's obstruction of the discovery process preceded the post-dissolution proceedings discussed above, as he had similarly obstructed proceedings in 2013 relating to avoiding paying child

---

[2] These rules most closely parallel Minnesota Rules of Professional Conduct 8.4, 3.4(a), 3.4(b), 3.4(c), 3.4(d), 8.4(c), 8.4(d), and 3.4 generally.

support. The referee identified several mitigating factors: the absence of a prior disciplinary record, personal or emotional problems (due to his emotional state during the divorce), and otherwise good character or reputation based on testimony from two fellow lawyers. Notwithstanding the referee's recommended discipline, the Florida Supreme Court opted to instead suspend Marcellus for 18 months, effective June 16, 2018. *Marcellus I*, 249 So.3d at 547. Marcellus never sought reinstatement in Florida following this suspension. He did not report the Florida discipline to the Director.

Following his suspension in Florida, Marcellus returned to Minnesota. He complied with Minnesota CLE and registration fee requirements and, in October 2020, he was transferred to active status as a licensed attorney in Minnesota. *See* Rule 16, Rules for Registration of Attorneys (RRA). He was hired as an Assistant Public Defender in Ramsey County in April 2021. In January 2022, he was hired by the Hennepin County Public Defender's Office.

In the same month that he was hired in Ramsey County, Florida instituted another disciplinary proceeding against Marcellus. The misconduct in *Marcellus II* concerned nonpayment of child support. On July 8, 2019, a Florida family court held Marcellus in contempt for his willful failure to comply with that court's orders requiring payment of child support. Under Rule 4-8.4(h), RRFB, an attorney's willful refusal to timely pay a child support obligation, as determined by a court of competent jurisdiction, constitutes

misconduct.[3] As noted above in the discussion of *Marcellus I*, Marcellus had been found to have failed to pay child support obligations as early as 2013. The report in those proceedings also found that Marcellus had remained deliberately underemployed. This does not seem to have changed after his suspension, as the family court that held him in contempt stated that Marcellus had only applied to be a substitute teacher. Marcellus's arrearages totaled $11,020.18 in August 2018, around the time of his suspension in Florida. By October 2020, arrearages had grown to over $30,000.

The second disciplinary proceeding was assigned to the same referee who made recommendations in *Marcellus I*. The referee determined that Marcellus violated Rule 4-8.4(h), RRFB. The referee also found aggravating factors including prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; submission of false evidence, false statements, or other deceptive practices during the disciplinary process; vulnerability of the victim; and indifference to making restitution. The only mitigating factor listed was imposition of other penalties or sanctions. The referee recommended a three-year suspension, which the referee stated was the maximum suspension short of disbarment. Among other things, the referee noted as reasons for the severity of the punishment Florida's movement toward more severe punishments, *see Florida Bar v. Rosenberg*, 169 So.3d 1155, 1162 (Fla. 2015), a demonstrated lack of desire on the part of

---

[3] Rule 4-8.4(h), RRFB, provides that "[a] lawyer shall not . . . willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation." Minnesota has no direct counterpart to this rule.

8

Marcellus to meet his obligations and take care of and support his children, and the fact that Marcellus's first suspension was partially caused by nonpayment of child support.

The Florida Supreme Court again imposed a heavier sanction than recommended. In September 2022, it disbarred Marcellus. *Marcellus II*, 2022 WL 4087827, at *1. Marcellus did not inform the Director of his disbarment in Florida. The Director independently learned of Marcellus's sanctions and misconduct from Florida discipline counsel, after which the present petition was filed seeking reciprocal discipline under Rule 12(d), RLPR.

**ANALYSIS**

Under Rule 12(d), RLPR, once the Director learns that a lawyer licensed to practice in Minnesota has been disciplined in another jurisdiction, the Director may investigate that lawyer and file a petition for reciprocal discipline. The rule provides that we may impose the same discipline imposed in the other jurisdiction "unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.* If, for any of those reasons, we may not impose identical discipline, we may in the alternative order "such other discipline or such other proceedings as [we] deem[] appropriate." *Id.*

Marcellus makes two arguments that reciprocal discipline is inappropriate. First, he argues that he was not a "lawyer licensed to practice in Minnesota" when he committed the underlying conduct in *Marcellus I* nor when he was sanctioned for it, meaning that we may only consider the conduct underlying the discipline imposed in *Marcellus II*. Second, he argues that, whether we consider *Marcellus I* or not, disbarment would be "unjust or

9

substantially different from discipline warranted in Minnesota," meaning that we must either impose an alternate sanction or order proceedings before the Office of Lawyers Professional Responsibility (OLPR) to investigate appropriate sanctions. We address each question in turn.

I.

We turn first to Marcellus's argument that we cannot consider his conduct that led to discipline in *Marcellus I* because he was on involuntary restricted status in Minnesota from 2009 to 2020 for failing to meet CLE requirements and pay his annual registration fee. Rules 2(A), 2(F), and 14(A), RRA. All of the conduct underlying his discipline in *Marcellus I* occurred during that period.

Marcellus relies on language in Rule 12(d), RLPR, stating that "[u]pon learning from any source that a lawyer licensed to practice law in Minnesota has been publicly disciplined or is subject to public disciplinary charges in another jurisdiction, the Director may commence an investigation and, without further proceedings, may file a petition for disciplinary action [in] this Court." Marcellus argues that this sentence limits our authority to impose reciprocal discipline under Rule 12(d) to those lawyers who have an active and non-suspended license to practice law in Minnesota at the time they commit misconduct and are subject to discipline in another jurisdiction. Accordingly, Marcellus argues we lack power to impose reciprocal discipline under Rule 12(d) because, at the time he engaged in the misconduct and was subject to the discipline Florida imposed in *Marcellus I*, he was on involuntary restricted status in Minnesota for failing to pay lawyer

registration fees and satisfy his CLE requirements. *See* Rule 14, RRA; Rule 12, Rules of the Minnesota State Board of Continuing Legal Education.

We disagree. Marcellus reads too much into the first sentence of Rule 12(d). The sentence is a procedural provision that empowers the Director to initiate a reciprocal discipline proceeding. And, in this case, at the time the Director learned that Marcellus had been publicly disciplined in Florida, Marcellus was licensed to practice law (and was in fact practicing law) in Minnesota.

## II.

Having concluded that the entirety of Marcellus's Florida misconduct is subject to reciprocal discipline under Rule 12(d), RLPR, we must now determine whether imposition of that reciprocal discipline—disbarment—is appropriate. Rule 12(d) states that we may impose reciprocal discipline "unless it appears that discipline procedures in [Florida] were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota."

Marcellus does not argue that his proceedings in Florida were unfair. Accordingly, we must determine whether disbarment would be unjust or if disbarment would be substantially different from discipline warranted in Minnesota. *See In re Jensen*, __ N.W.3d __, No. A24-0113, 2024 WL 4551319, at *3 (Minn. Oct. 23, 2024) (explaining the requirements for imposing reciprocal discipline under Rule 12(d), RLPR).

## A.

Before we address those questions, however, we consider Marcellus's argument that we must independently and separately consider (1) whether the 18-month suspension for

the conduct in his divorce proceedings, including his nonpayment of child support through 2018, is unjust or substantially different from discipline warranted in Minnesota (the misconduct at issue in *Marcellus I*); and (2) whether his disbarment for continuing to intentionally fail to make child support payments is unjust or substantially different from discipline warranted in Minnesota (the misconduct at issue in *Marcellus II*). We decline to do so.

In considering whether to impose reciprocal discipline, we consider an attorney's misconduct cumulatively; splitting the misconduct from *Marcellus I* and *Marcellus II* is essentially impossible because Marcellus's disbarment in *Marcellus II* was imposed in the context of his earlier misconduct addressed in the *Marcellus I* proceedings. *See In re Overboe*, 867 N.W.2d 482, 488 (Minn. 2015). Indeed, the Florida Supreme Court's decision to disbar Marcellus was premised in part on Marcellus's conduct in *Marcellus I*. *Marcellus II*, 2022 WL 4087827, at *1 (relying in part on the Report of Referee which discussed Marcellus's prior conduct and ongoing pattern of conduct as well as prior disciplinary action in recommending discipline).

## B.

Marcellus argues that reciprocal discipline of disbarment would be unjust due to changed circumstances. He claims that his situation is analogous to *In re Otis*, 582 N.W.2d 561 (Minn. 1998), in which we declined to impose reciprocal discipline of disbarment. *Id.* at 565. Otis was disbarred in New Hampshire for sexual misconduct. *Id.* at 561–62. Following the disbarment, new information emerged suggesting that his conduct may have resulted from a seizure disorder which he successfully treated through medication. *Id.* at

12

563. We said that "[t]he facts surrounding Otis's mitigation have significantly changed since the time the New Hampshire Supreme Court disbarred him," and the misconduct did "not appear likely to recur." *Id.* at 565. Therefore, "disbarment [was] not necessary to protect the public." *Id.*

Under *Otis*, discipline imposed in another jurisdiction may be "unjust" under Rule 12(d), RLPR, if a lawyer shows that the circumstances that caused their misconduct have changed, especially if evidence of those changed circumstances was not available in the disciplinary proceedings in the other jurisdiction, and the discipline imposed in the other jurisdiction is no longer necessary to protect the public. *Jensen*, __ N.W.3d __, 2024 WL 4551319, at *5.

Marcellus claims that, since April 2021, when the hearing in *Marcellus II* occurred, he has consistently paid child support. He included in the record before us receipts of child support payment as well as affidavits from colleagues and family members attesting to his change in character and compliance since returning to Minnesota.

All of this is laudable. But it does not render imposition of reciprocal discipline unjust. First, failure to pay child support is not the sole basis for Marcellus's Florida disbarment; that decision was also based on his conduct in his divorce proceedings addressed in *Marcellus I*. The information Marcellus provided does not demonstrate that the causes of that misconduct have been fully resolved. Moreover, the record is not clear as to whether Marcellus has become fully compliant with his child support obligations or has established a plan to do so. *Cf.* Rule 30, RLPR (requiring a lawyer in arrears in payment of child support to be administratively suspended until the lawyer has paid the arrearages

or is in compliance with an approved payment plan). Further, much of the changed conduct Marcellus points to occurred after Florida initiated the second discipline proceeding—a proceeding Marcellus failed to report to the Director. We are reluctant to allow a lawyer to benefit from the passage of time that is the result of the lawyer's failure to report the initiation of disciplinary proceedings and imposition of discipline in another jurisdiction to the Director. *See In re Perez*, 688 N.W.2d 562, 568 (Minn. 2004).

C.

Having concluded that reciprocal discipline of disbarment would not be unjust, we now ask whether reciprocal discipline of disbarment would be substantially different from what we would impose in Minnesota. *Jensen*, __ N.W.3d __, 2024 WL 4551319, at *3. This language does not impose a cap on the reciprocal discipline we may impose equal to the maximum discipline we would impose if the disciplinary proceeding occurred in Minnesota. *Id.* at *6; *see Overboe*, 867 N.W.2d at 487 (noting that the question "is not whether we might have imposed different discipline had [the lawyer's] disciplinary proceedings originated in Minnesota, but rather whether the discipline imposed by [the other jurisdiction] is unjust or substantially different from discipline warranted in Minnesota" (citation omitted) (internal quotation marks omitted)); *In re Wolff*, 810 N.W.2d 312, 317 (Minn. 2012) (noting that reciprocal discipline is appropriate "only if *similar* discipline would be warranted in Minnesota" (emphasis added)). Rather, the word "substantial" must carry some meaning. Marcellus must show not only that disbarment is outside the range of discipline this court would impose, but also that it is substantially so. *Jensen*, __ N.W.3d __, 2024 WL 4551319, at *6.

14

On this record, Marcellus must show that disbarment is substantially different from the discipline that might be imposed in Minnesota for a lawyer who (1) aided in procuring a forged signature for a loan modification agreement that (2) violated a court order requiring him to either remove his former spouse's name from their marital home's mortgage or otherwise sell that home, (3) filed the forged loan modification agreement with the bank, (4) proceeded to defy and evade numerous court orders in marriage-dissolution proceedings to the extent that he was threatened with arrest and was assessed numerous fines for non-compliance, (5) did not pay court-ordered fees for failure to respond to discovery requests, (6) failed to pay court-ordered child support while intentionally remaining underemployed to feign inability to pay, and (7) continued to resist paying child support while running up significant arrearages despite already having his law license suspended in Florida in part due to his earlier failure to pay. Once again, in assessing appropriate discipline, we consider all the misconduct. *See In re Lee*, 3 N.W.3d 278, 283–84 (Minn. 2024) (considering the "cumulative weight of the lawyer's misconduct"). The Florida court also found several aggravating factors which we must consider.[4] We

---

[4] The Florida court found as aggravating factors the existence of dishonest or selfish motive, a pattern of misconduct, multiple offenses; submission of false statements or evidence or other deceptive practices during the disciplinary process; the vulnerability of the victim, substantial experience in the practice of law; and indifference to making restitution. Many of these may also be aggravating factors in Minnesota discipline cases. *See In re Blomquist*, 958 N.W.2d 904, 916 (Minn. 2021) (stating that the existence of dishonest or selfish motive may be an aggravating factor); *In re Udeani*, 945 N.W.2d 389, 398–99 (Minn. 2020) (stating that a pattern of misconduct and the vulnerability of the victim may be aggravating factors); *In re Langree*, 9 N.W.3d 159, 171, 172 (Minn. 2024) (stating that substantial experience in the practice of law and submission of false statements or evidence or other deceptive practices during the disciplinary process may be aggravating

conclude that disbarment is not substantially different from the discipline we would impose.

One comparable case among our precedents is the order we issued based on a stipulation between the Director and a lawyer in *In re Griffin*, 871 N.W.2d 567 (Minn. 2015) (order). The lawyer in *Griffin* intentionally avoided service of process, failed to pay child support obligations, failed to attend court hearings, provided legal advice while suspended from the practice of law, implied that he had the ability to improperly influence the Transportation Security Administration, and failed to cooperate during disciplinary proceedings. *Id*. at 567. He had an extensive private disciplinary history and one prior 60-day suspension, based in part on the same type of misconduct at issue in the case. *Id*. The lawyer in *Griffin* also committed some of his misconduct while on disciplinary probation and failed to comply with the conditions of discipline that we ordered in prior cases. *Id*. at 567–68. This court imposed an indefinite suspension of a minimum of four months, stating that, because of his conduct, the lawyer "must petition for reinstatement." *Id*. at 568.

There are some similarities between this case and *Griffin*—the failure to pay child support, the avoidance of court process, and the refusal to obey court orders. The lawyer

---

factors). In our disposition of a reciprocal discipline case, when considering the aggravating factors the Florida court identified (for instance, the existence of multiple offenses), we follow our rule that we do not double-count as aggravating factors any facts that we already considered in assessing the proper discipline for violations of the Rules of Professional Conduct. *In re Nwaneri*, 978 N.W.2d 878, 890 n.7 (Minn. 2022) (stating that "because we consider [the client's] vulnerability as an immigrant in assessing the seriousness of Nwaneri's conduct, we will not also consider it as an aggravating factor").

in *Griffin* also committed some misconduct that Marcellus did not commit—providing legal advice while suspended from the practice of law and implying that he had the ability to improperly influence a federal agency. On the other hand, the lawyer in *Griffin* did not engage in some of the most serious forms of Marcellus's misconduct, including fraud through forgery to accomplish an end that was in direct violation of a court order. Marcellus disobeyed and evaded court orders to the extent that he was threatened with arrest and fined. And he remained underemployed in an effort to feign an inability to pay child support.

Turning to the aggravating factors in each case, we observe that, although Marcellus's disciplinary history (an aggravating factor here and in *Griffin*) is less voluminous than the lawyer's disciplinary history in *Griffin*, Marcellus's disciplinary history has resulted in more serious discipline. Additionally, like the lawyer in *Griffin*, Marcellus committed some misconduct while on probation for the same type of misconduct. Marcellus also failed to fully cooperate with disciplinary proceedings in Florida by submitting false statements and evidence and engaging in other deceptive practices. We also note that, unlike the record before us, the record in *Griffin* does not reflect that the lawyer had a dishonest or selfish motive or engaged in a pattern of misconduct.

In short, in *Griffin*, we recognized that conduct including failure to pay child support, avoiding service of process, and ignoring court orders—in addition to other misconduct—was sufficiently serious to warrant a minimum four-month suspension with the requirement that the lawyer petition for reinstatement. *See id.* at 567–68. Marcellus's

misconduct, along with aggravating factors, is more extensive and more serious than the misconduct in *Griffin*.

We also consider *In re Giberson*, 581 N.W.2d 351 (Minn. 1998). *Giberson* involved an attorney accused of willful nonpayment of child support who accrued arrearages of over $170,000 in child support and spousal maintenance. 581 N.W.2d at 352–53. The lawyer practiced in Minnesota for several years, but at the time of his dissolution proceedings, he had moved to New York. When the lawyer failed to appear for a hearing, a warrant for his arrest was issued in New York. *Id.* at 353. The lawyer then apparently moved to California to avoid arrest. *Id.* The lawyer also failed to show up to or otherwise cooperate with disciplinary proceedings in Minnesota and failed to respond to an order to show cause. *Id.* We indefinitely suspended the lawyer and provided that he could not be reinstated unless he submitted a petition for reinstatement and demonstrated that he had either paid off his arrearages or was in compliance with an approved payment plan. *Id.* at 355.

As with *Griffin*, there are obvious similarities between this case and *Giberson*, particularly with regard to both lawyers' misconduct during dissolution and child support proceedings, efforts to evade court process, and willful and egregious refusal to pay child support. Moreover, although the lawyer in *Giberson* accrued significantly greater arrearages than Marcellus, the lawyer in *Giberson* did not commit any unrelated misconduct. *See id.* at 354 (stating that the disciplinary case involving Giberson was "based primarily on an attorney's failure to comply with a court order to pay child support and spousal maintenance"). By contrast, here Marcellus separately engaged in fraud

through forgery to accomplish an end that was in direct violation of a court order. And there is no mention in *Giberson* of aggravating factors. As in *Griffin*, the conduct in *Giberson* was sufficiently serious to warrant an indefinite suspension, and Marcellus's misconduct, taken as a whole, is more serious than the misconduct in *Giberson*.

In his discussion of *Giberson*, Marcellus also points to Rule 30, RLPR. The rule permits administrative suspension of an attorney's license until they pay child support arrearages or are in compliance with an approved payment plan. Rule 30(a), RLPR.[5] Contrary to Marcellus's argument, however, *Giberson* itself was not an administrative suspension case. The Director proceeded by filing a petition alleging violations of the

---

[5]     Rule 30, RLPR, provides for an administrative suspension:

(a) Upon receipt of a district court order or a report from an Administrative Law Judge or public authority pursuant to [Minnesota Statutes, section] 518A.66 finding that a licensed Minnesota attorney is in arrears in payment of maintenance or child support and has not entered into or is not in compliance with an approved payment agreement for such support, the Director's Office shall serve and file with the Supreme Court a motion requesting the administrative suspension of the attorney until such time as the attorney has paid the arrearages or entered into or is in compliance with an approved payment plan. The Court shall suspend the lawyer or take such action as it deems appropriate.
. . .
(c) An attorney administratively suspended under this rule may be reinstated by filing an affidavit with supporting documentation averring that he or she is no longer in arrears in payment of maintenance or child support or that he or she has entered into and is in compliance with an approved payment agreement for payment of such support. Within 15 days of the filing of such an affidavit the Director's Office shall verify the accuracy of the attorney's affidavit and file a proposed order for reinstatement of the attorney requesting an expedited disposition.
(d) Nothing in this rule precludes disciplinary proceedings, if the attorney's conduct also violates the Minnesota Rules of Professional Conduct.

19

Rules of Professional Conduct. *Giberson*, 581 N.W.2d at 353 (noting that because the lawyer could not be found, the Director proceeded under Rule 12(c), RLPR). Further, we concluded that the lawyer's failure to pay child support and spousal maintenance violated Rules 3.4(c) and 8.4(d), Minnesota Rules of Professional Conduct. *Id.* at 354; *see* Rule 30(d), RLPR (providing that "[n]othing in this rule precludes disciplinary proceedings, if the attorney's conduct also violates the Minnesota Rules of Professional Conduct"). We also noted that the misconduct in *Giberson* included actions—non-cooperation—in addition to failure to pay child support. *Giberson*, 581 N.W.2d at 354. In short, in *Giberson*, although the conditions on reinstatement we imposed reflected some of the requirements of Rule 30, RLPR, we did not proceed under Rule 30, RLPR. We are not compelled to proceed under Rule 30, RLPR, in this case.[6] And while we did not disbar the lawyer in *Giberson*, we imposed a serious sanction of an indefinite suspension.

Based on our imposition of indefinite suspensions in *Griffin* and *Giberson* and the fact that Marcellus's misconduct is more extensive and serious than the misconduct in those cases, we conclude that the disbarment imposed by the Florida Supreme Court is not substantially outside the range of discipline we would impose in Minnesota.

Of course, no two discipline cases are exactly alike, and each may involve different combinations of violations. Accordingly, we also consider cases involving the specific types of distinct misconduct in which Marcellus engaged. For instance, in cases of attorneys who engaged in forgery that did not also involve misappropriation from a client,

---

[6]     It is worth noting that the record does not make it clear that Marcellus has satisfied Rule 30(c), RLPR.

we have imposed discipline ranging from a suspension of 90 days to an indefinite suspension of no less than six months. *See, e.g.*, *In re Aitken*, 787 N.W.2d 152, 155–57 (Minn. 2010) (imposing a 90-day suspension on an attorney who forged his client's signature on a plea petition, submitted that plea petition to the court without the client's knowledge or consent, and failed to cooperate with the OLPR's disciplinary investigation), *reinstatement granted*, 825 N.W.2d 747 (Minn. 2013) (order); *In re Ruffenach*, 486 N.W.2d 387, 388–89, 391 (Minn. 1992) (imposing suspension of not less than 90 days on a lawyer who submitted a court-ordered financial disclosure form grossly underrepresenting and misrepresenting his assets to a judgment creditor); *In re Boyd*, 430 N.W.2d 663, 663–64, 667 (Minn. 1988) (imposing a six-month suspension on a lawyer who, to benefit his client rather than himself, prepared a false deed; caused it to be forged, notarized, and filed; and later issued a false title opinion based on that deed), *reinstatement granted*, 441 N.W.2d 500 (Minn. 1989) (order); *In re Danna*, 403 N.W.2d 239, 240 (Minn. 1987) (imposing a 90-day suspension on lawyer who, without his client's knowledge or consent and without her appearing before him, signed the client's name to an affidavit he had drafted, then executed and attached his notary public certificate to the affidavit); *see also In re Chacon*, 581 N.W.2d 355, 356–58 (Minn. 1998) (disbarring an attorney who had two felony convictions for passing forged checks, failed to communicate with clients, and neglected client affairs by ignoring court orders, substantially prejudicing the clients).

Marcellus points to *Boyd* to support his argument that disbarment is substantially different from the discipline we would impose in Minnesota. In *Boyd*, we suspended a lawyer for a minimum of six months for preparing a false deed, presenting it to his client

21

for a forged signature, directing a notary to certify the signature, allowing the deed to be recorded, and later issuing a false title opinion based on that deed. 430 N.W.2d at 663–64. While Marcellus's conduct parallels one aspect of the attorney's conduct in *Boyd*—causing the execution and processing of a forged document—Marcellus engaged in additional misconduct, including filing the loan modification agreement that itself contradicted a court order and engaging in ongoing failure to pay child support. Therefore, although the six-month suspension imposed in *Boyd* resulted from misconduct comparable to a portion of Marcellus's, the extent and continuing nature of misconduct at issue in Marcellus's case is greater than the misconduct at issue in *Boyd*.

For attorneys who, like Marcellus, have not been honest with the court, we have imposed discipline ranging from a public reprimand to an indefinite suspension of not less than one year. *See, e.g.*, *In re Gallatin*, 4 N.W.3d 91 (Minn. 2024) (order) (public reprimand for attorney who forged opposing pro se parties' signatures on settlement documents, resulting in the case's dismissal, with three judges dissenting and arguing for a 30-day suspension); *In re Brehmer*, 620 N.W.2d 554 (Minn. 2001) (imposing suspension of not less than one year on attorney who, among other things, perpetrated fraud on the court by making false statements in a pretrial hearing, denied the existence of medical records which he knew existed, and fraudulently executed client affidavits).

Marcellus points us to *In re Scott*, 657 N.W.2d 567 (Minn. 2003) (order), where we imposed a stipulated 30-day suspension on an attorney for making false statements of fact in court during his own marital dissolution and custody matter. *Id.* at 568. Again, while relevant, the lawyer in *Scott* engaged in substantially less misconduct than Marcellus and

22

a 30-day suspension is at the lower end of the range of discipline we have imposed for false statements to the court.

We have imposed indefinite suspension for a lawyer's refusal to comply with a court order. For instance, in another case Marcellus cites, *In re Nelson*, 933 N.W.2d 73 (Minn. 2019) (order), the attorney failed to pay a law-related judgment, failed to respond to court orders, and failed to comply with court orders to show cause why he should not be held in contempt, in addition to failing to appear for a court hearing, failing to communicate with a client, and making improper solicitations to provide legal services. *Id.* at 73. We indefinitely suspended the lawyer for a minimum of six months. *Id.* Marcellus's conduct is more serious than the conduct of the lawyer in *Nelson*. *Nelson* did not involve an attorney executing a fraudulent document for personal gain, nor a repeated and willful failure to comply with child support orders for many years. *See also, e.g.*, *In re Jensen*, 542 N.W.2d 627, 628 (Minn. 1996) (imposing indefinite suspension on attorney who refused to pay court-ordered attorneys fees in addition to abusing his position as an attorney to harass the person to whom he owed the fees during his continued nonpayment), *reinstatement granted*, 593 N.W.2d 240 (Minn. 1999) (order).

Based on our review of our prior cases, we conclude that disbarment is not substantially different from the discipline we would impose if the disciplinary proceeding initially occurred in Minnesota.

\*     \*     \*

The varied ways and fact-specific circumstances in which attorneys commit misconduct means that no case with perfectly analogous facts exists to compare to

23

Marcellus's misconduct and aggravating behavior. Based on our review of Marcellus's misconduct and our past cases, we cannot say that disbarment is unjust or substantially different from discipline warranted in Minnesota.

We caution that this opinion should not stand as precedent that we would necessarily disbar a lawyer who engaged in the same misconduct as Marcellus if we faced the question independently and directly. Such a decision is left for other cases. We also observe that we are encouraged that Marcellus appears to be making positive changes in rebuilding his relationship with his family and making progress on paying his child support arrearages. Should Marcellus choose to seek reinstatement to practice in Minnesota under Rule 18(e)(1) and (4), RLPR (setting forth the conditions under which a disbarred lawyer may be reinstated to the practice of law), his alleged recent payment of child support and reconciliation with his family prior to the issuance of this opinion should be favorably considered.

## CONCLUSION

We hold that reciprocal discipline is appropriate. We order that Madsen Marcellus, Jr., is disbarred from the practice of law in the State of Minnesota, effective upon the date of this opinion. Marcellus must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

Disbarred.

24

HENNESY and GAÏTAS, JJ., not having been members of this court at the time of submission, took no part in the consideration or decision of this case.